In re Trust of William Stork.

In re Estate of Mary Stork.

W. V. Steuteville, Appellee, v. Wilhelmina Fosnot et al., Appellants; C. W. Britton, Executor, et al., Appellees.

No. 46174.

MAY 4, 1943.

Kindig, Faville, Kindig & Beebe, of Sioux City, for J. W. Kindig, Guardian ad litem of Fred Stork, appellant.

Prichard & Prichard and John Beardsley, all of Onawa, for Wilhelmina Fosnot, Wilbur Fosnot, and Burton Fosnot, appellants.

Stilwill, Brackney & Stilwill, of Sioux City, for C. W. Britton, Executor and Trustee of the Estate of Mary Stork, appellee.

Audley W. Johnson, of Sioux City, for Methodist Hospital of Sioux City, appellee.

A. G. Hess and Hess & Hess, all of Sioux City, for Morningside Presbyterian Church of Sioux City, appellee.

W. V. Steuteville, of Sioux City, pro se.

WENNERSTRUM, J.— The question involved in this appeal is whether or not there has been an exercise of a power of appointment incorporated in an original will by reason of the subsequent execution of a will by the person to whom was given the power of appointment. A successor trustee, under the original will, presented to the trial court a petition for construction of the two wills and asked direction as to the disposition of the property held by him. The trial court held that there had been an exercise of the power of appointment and further held that the property passed as directed by the second will. The contingent beneficiaries of the original will have appealed.

The two wills involved are those of William Stork, a widower, and of Mary Stork, his daughter.

The portions of the will of William Stork that are involved in this litigation are as follows:

"2. To my grandson, Fred Stork, I give and devise the sum of $2,000.00 the said sum to be held in trust, however, by my trustee hereinafter named till my said grandson attains the age of 25 years. When he attains that age the bequest shall become his absolutely.

"3. To my daughter, Mary Stork, I devise all my household goods, my automobile, all tools and farm equipment, and all my livestock, and other similar property on my farm hereinafter described.

"4. All the rest, residue and remainder of my property, I hereby devise to the Farmers Loan & Trust Company of Sioux City, Iowa, in trust to pay the income and profit therefrom at stated intervals, preferably semi-annually to my said daughter, as long as she lives; she to have the right to occupy the dwelling house on the East Half (E½) of the Southwest Quarter (SW¼) of Section Fourteen (14), Township Eighty-eight (88), Range Forty-seven (47), Woodbury County, Iowa, and the yard adjacent thereto, and such additional ground as she may desire for her personal use and convenience. If the income from the property thus devised in trust is found insufficient to properly care for and support my said daughter, the trustee may use a

part or parts of the principal estate for such purpose. Upon the death of my said daughter, Mary Stork, the entire trust estate remaining in the hands of the trustee shall be distributed as directed in her last will and testament, such will to be deposited for safekeeping with trustee, and upon her failure or inability to make a will disposing of the estate hereby devised in trust, such entire estate shall go to the heirs of the said Mary Stork.''

The particular portions of the will of Mary Stork that are subject to construction and consideration are as follows:

''I, MARY STORK, of Sioux City, Woodbury County, Iowa, being of sound and disposing mind and memory, do hereby make, publish, and declare this to be my last Will and Testament, hereby revoking any and all wills heretofore made by me.

''My immediate family consists of only my sister, Wilhelmina Fosnot, of Adair, Oklahoma, and her two sons, Wilbur E. Fosnot of Adair, Oklahoma, and now about twenty years of age, and Burton Fosnot, now about fifteen years of age, both of Adair, Oklahoma, and also my nephew Fred Stork of Lethbridge, Canada, son of my brother William Stork. None of these relatives have made their home with me for many years.

''Subject to the payment of my just debts and funeral expenses, I give, devise and bequeath all of my property, both real and personal, wherever situated, as follows:

''1. I give to my sister, Wilhelmina Fosnot, of Adair, Oklahoma, the sum of Five Thousand Dollars ($5,000.00).

''2. I give the farm upon which I now live, and occupy as a home, and described as follows:

''The East Half of the Southwest Quarter of Section 14, and all that part of the Northwest Quarter and all that part of the East Half of the Northeast Quarter of Section 23 lying north of the Denison Highway, both of said properties being in Township 88, Range 47, Woodbury County, Iowa, to C. W. Britton, in trust, for the sole use and benefit of my nephews above mentioned, Wilbur E. Fosnot, Burton Fosnot and Fred Stork, share and share alike, and it shall be operated and managed by said Trustee until the youngest of my three nephews shall have attained the age of twenty-five years, at which time the Trustee

shall convey the legal title to said three heirs jointly, subject to the provisions of the next succeeding numbered paragraph hereof.

"If, at the time of my death, the youngest of my three nephews shall have attained the age of twenty-five years, then this paragraph of my Will shall be modified to the extent only that the title to the land hereinbefore described, shall go directly to my three nephews, share and share alike, subject to the provisions of the next succeeding numbered paragraph hereof.

"3. * * *

"4. I give, devise, and bequeath to the Methodist Hospital of Sioux City, Iowa, under whatever corporate name it may be organized, the sum of Five Thousand Dollars ($5,000.00), out of the proceeds of my personal property.

"5. I give, devise and bequeath to the Morningside Presbyterian Church of Sioux City, Iowa, the sum of Five Thousand Dollars ($5,000.00), for its own use, and an additional Five Thousand Dollars ($5,000.00) to be used by it in furthering the interests of its foreign missions. These two bequests to be made only out of the proceeds of my personal property, after the payment of the bequest to my sister, first above mentioned.

"In the event my personal property is not sufficient to pay the bequests herein made, then it is my desire that my sister be paid her Five Thousand Dollars ($5,000.00) first, and the balance prorated out of my personal property to pay the bequests made in Paragraphs 4 and 5 hereof.

"6. All the rest and residue of my estate I give, devise and bequeath to C. W. Britton, in trust, to invest and reinvest the same in good securities and pay the net income therefrom to my three nephews, above mentioned, share and share alike, until each attains the age of twenty-five years, and as each nephew attains the age of twenty-five years, he shall be entitled to an undivided one-third of said trust estate. Should any one of the said nephews die without children before reaching the age of twenty-five, his share shall go to the surviving nephew share and share alike.

"7. I nominate C. W. Britton, of Sioux City, Iowa, to be the executor of this my Last Will and Testament, and I particularly recommend to the Court that said C. W. Britton, both

as executor and trustee, be required to give bond only for the amount of the personal property coming into his hands and not in double the amount.''

The material facts shown by the evidence and which bear upon this litigation are as follows:

William Stork died testate on December 16, 1932. His wife predeceased him and he never remarried. William Stork had three children, but was survived at his death by only two of them, to wit, his daughter, Mary Stork, whose will is here involved, and another daughter, Wilhelmina Fosnot, one of the appellants. Fred Stork, a minor, is the only child of William Stork, Jr., now deceased, a son of William Stork. Stork is represented in this action by a guardian ad litem. Wilbur Fosnot and Burton Fosnot, appellants in this action, are the children of the appellant, Wilhelmina Fosnot.

Upon the death of William Stork his will was admitted to probate and the Farmers Loan & Trust Company of Sioux City, Iowa, became the trustee under his will and acted as such until August 27, 1938. On that date, the appellee, W. V. Steuteville, was named as successor trustee of the William Stork trust estate. Mary Stork, until her death, received the income from this trust estate. At the time of Mary Stork's death she had approximately $13,200 in personal property in her own estate.

Mary Stork died June 26, 1940. Her will, executed in July 1936, was kept in the office of an attorney until after her death. It was then taken in the original envelope to the office of the appellee. W. V. Steuteville before it was filed for probate. While the Farmers Loan & Trust Company was trustee of the William Stork trust estate it turned over to Mary Stork, for the purpose of management and control, the real estate originally owned by her father. W. V. Steuteville, as trustee, did not exercise any authority as to management and control over the real estate in the William Stork estate. The record shows that on December 20, 1934, Mary Stork made an application wherein she asked that the Farmers Loan & Trust Company deliver to her the possession of the farm and premises held by them as trustee under the will of William Stork. In this application she refers to herself as the sole residuary beneficiary under the terms of the will of her

father. It is not disclosed by the record whether or not an order was entered by the court authorizing the then trustee to turn over the management and control of the farm property to Mary Stork. However, it is shown by proceedings in this estate that Mary Stork did assume control of this property.

It is the contention of the appellants in this court, as it was in the trial court, that Mary Stork did not exercise in her will the power granted her in the will of her father, William Stork, for the following reasons: (1) Mary Stork did not deposit her will with a trustee as requested in the will of her father (2) she did not say in her will that she was exercising the power (3) Mary Stork had property of her own to devise, and therefore there was no presumption that she exercised the power (4) although she described certain real estate in her will which was owned by her father, yet, it is asserted, she believed, during her lifetime, that she owned this real estate, and (5) in the alternative, Mary Stork could exercise the power referred to in her father's will as to the real estate and fail to exercise it as to the personal property.

The trial court held that there had been an exercise of the power of appointment and disposition of the property of William Stork by the execution of the will of Mary Stork and directed that the trust fund of $2,000 which had been established for Fred Stork, a grandson, and held by the original trustee and its successor, be continued, and further directed that there be paid and distributed to the legatees named in the Mary Stork will the sums hereafter named and in the following order, to wit: To Wilhelmina Fosnot, sister of Mary Stork, $5,000, less inheritance tax; to Methodist Hospital of Sioux City, Iowa, $5,000; to Morningside Presbyterian Church of Sioux City, Iowa, $10,000. It further directed that the residue, after the payment of costs and expenses of administration, should be held in trust for her three nephews by the trustee named in the will of Mary Stork.

As previously stated, the question presented is whether or not the trial court was in error in finding and decreeing that Mary Stork, by the execution of her will, exercised the power of appointment given to her by the will of her father as to all the property held in his estate, both real and personal.

Questions relating to the exercise of a power of appointment have been commented upon in many decisions of the various state courts and by the several United States courts. They also have been the subject of study and comment by many text writers. This court, on only one prior occasion, has had the opportunity to pass upon this question. This was in the recent case of In re Wills of Proestler, 232 Iowa 640, 5 N. W. 2d 922. We there stated that inasmuch as there was no statutory authority in this state on this subject we would follow the rules and principles of interpretation of the common law, and, at page 645 of 232 Iowa, page 925 of 5 N. W. 2d, said:

"The general common-law principle is set forth in section 343 of the Restatement of the Law of Property, volume 3, page 1913, as follows: 'When the donee by his will makes a gift of the residue of his estate or otherwise manifests an intent to pass all his property, this of itself does not manifest an intent to exercise any power.' This statement is in accord with repeated pronouncements of various textbooks and annotators to the effect that, in the absence of statute, it is generally held that a power of appointment is not executed by the residuary clause in a will unless an intent to exercise the power appears in addition thereto from the terms of the will."

However, in paragraph 2 of section 343 of the Restatement of the Law of Property, on page 1913 there is set forth a further statement as to the circumstances under which it is recognized an appointment is made:

"(2) To whatever extent pecuniary gifts, a residuary gift or both, in the donee's will, read with reference to the property which he owned and other circumstances existing at the time of formulation of the will, indicate that the donee understood that he was disposing of property covered by a power, to that extent such gifts are appointments."

In 41 Am. Jur. 836, section 45, we find the following statement, which is a further guide to the problem here presented:

"If, considering all the circumstances, the intention is doubtful, the doubt will prevent the instrument from being deemed

an execution of the power. It is not necessary, however, that the intention to execute should appear by express terms or recitals in the instrument; it is sufficient if it appears by words, acts, or deeds demonstrating the intention. In the case referred to three classes of cases are enumerated which have been held to be sufficient demonstrations of an intended execution of a power: (1) where there has been some reference in the will or other instrument to the power; (2) a reference to the property which is the subject on which the power is to be executed; (3) where the provision in the will or other instrument executed by the donee of the power would otherwise be ineffectual or a mere nullity, in other words, would have no operation except as an execution of the power. The prevailing doctrine under modern authorities is that the question whether the instrument is an execution of the power depends upon the intent of the donee and that it is not necessary that the power should be referred to therein if the intent to execute is otherwise manifested. If from the tenor and effect of the deed or will by which title is conveyed the intent to execute the power is inferable, there is a valid execution of the power. If a will contains no expressed intent to execute a power, yet, if it may be gathered from all the gifts and directions made that their object was to execute it, the will must be regarded as an execution. If the donee of a power intends to execute it, and the mode is in other respects unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative."

One of the earlier cases that passed upon this question, and which has been frequently quoted in opinions relative to this particular problem, is the case of Blagge v. Miles, 1841, C. C. Mass., 1 Story's Reports 426, 445, 3 Fed. Cas. (No. 1479) 559, 566, where Justice Story of the United States Supreme Court made the following pertinent comment:

"It is now admitted to be established, as the general rule, that the intention of the testator is the polestar to direct the Court in the interpretation of wills, and that technical words and set phrases are controlled by, and do not control, that

intention, when clearly expressed or positively ascertained.
\* \* \*

"I apprehend, that similar doctrines now generally prevail in regard to the execution of powers, and especially in regard to their execution by last wills and testaments. The main point is, to arrive at the intention and object of the donee of the power in the instrument of execution; and, that being once ascertained, effect is given to it accordingly. The authorities upon the subject may not all be easily reconcilable with each other. But the principle furnished by them, however occasionally misapplied, is never departed from, that if the donee of the power intends to execute, and the mode be, in other respects, unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. I agree, that the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful, under all the circumstances, then that doubt will prevent it from being deemed an execution of the power. All the authorities agree, that it is not necessary, that the intention to execute the power should appear by express terms or recitals in the instrument. It is sufficient, that it shall appear by words, acts or deeds, demonstrating the intention."

From the statements heretofore set forth it is apparent that the rule to be followed by the courts is that they should seek to ascertain from the will whether the donee has indicated an intention to exercise the power of appointment. If this intention is disclosed in the will of the donee or from the facts and circumstances present at the time of the execution of the will, it has been generally recognized by the authorities that there has been an exercise of the power of appointment.

With these prior statements as our guide we now proceed to an analysis of the facts in this case for the purpose of determining whether or not there are sufficient circumstances to indicate an intention to exercise the power of appointment as incorporated in the will of William Stork.

It is apparent that there was no specific reference made

in the will of Mary Stork to the power of appointment referred to in the will of William Stork. We should then determine whether there was any reference made in the Mary Stork will to property previously owned by William Stork which would indicate an intention to exercise the power of appointment. We think there was. It is apparent that the real estate mentioned in the two wills is the same property. Consequently, we have reached the conclusion, aided by the guides previously mentioned, that the power of appointment was exercised as to the real estate held originally by the father.

We shall now give consideration to that part of the will of Mary Stork wherein she makes certain bequests. These bequests are set out in paragraphs 1, 4, and 5 of her will. In paragraph 1, Mary Stork makes a bequest of $5,000 to her sister. In paragraph 4, she makes a bequest of $5,000 to the Methodist Hospital of Sioux City, Iowa, *"out of the proceeds of my personal property."* (Italics supplied.) In paragraph 5, in referring to the two bequests to the Morningside Presbyterian Church of Sioux City, Iowa, the testatrix states that "These two bequests [are] *to be made only out of the proceeds of my personal property,* after the payment of the bequest to my sister, * * *." (Italics supplied.) In this same division of the Mary Stork will it is provided that:

"In the event *my personal property* is not sufficient to pay the bequests herein made, then it is my desire that my sister be paid her Five Thousand Dollars ($5,000.00) first, and the balance prorated *out of my personal property* to pay the bequests made in Paragraphs 4 and 5 hereof." (Italics supplied.)

It is quite apparent to us that insofar as the bequests are concerned the testatrix intended that these gifts be paid only from her personal estate. Consequently it is our conclusion and holding that the payment of the bequests noted in paragraphs 1, 4, and 5 should be paid only from the personal estate of Mary Stork. By reason of this holding it follows that the bequest to the sister, Wilhelmina Fosnot, should be paid in full and the balance remaining from the proceeds of the personal property of Mary Stork should be prorated between the Methodist Hospital of Sioux City, Iowa, and the Morningside

424

Presbyterian Church of Sioux City, Iowa. In other words, the balance remaining after the payment of the Wilhelmina Fosnot bequest should be paid on the basis of one third to the Methodist Hospital and two thirds to the Morningside Presbyterian Church.

It will be further observed that paragraph 6 of the Mary Stork will provides that the balance of her estate (not otherwise disposed of) is devised and bequeathed to a trustee for the benefit of her three nephews. Her will, insofar as it relates to the disposition of the trust estate which she provided for, would be indeed ineffectual unless we consider the property held in the trust estate set up by her father.

■ It should be kept in mind that her heirs are her sister, Wilhelmina Fosnot, and her nephew, Fred Stork, and that under the provisions of the father's will the property held in his trust estate would go to these heirs. However, the trust estate which Mary Stork sets up in her will provides and directs that the trust property shall go to her three nephews. Thus it will be seen that the provisions of the will of Mary Stork make a different disposition of the property held in the father's trust estate than is provided for in her father's will. It is thus shown that, in making this different provision for the disposition of property included in the trust estate set up by the father, Mary Stork exercised the power of appointment.

■ The general rule of construction that a will should be interpreted so as to avoid partial intestacy is applicable in this present case.

It seems to us that the provision of paragraph 2 of section 343 of the Restatement of the Law of Property, page 1913, heretofore quoted, gives us ample authority for our conclusion that there was an exercise of the power. This section states that to whatever extent pecuniary gifts, a residuary gift, or both, in a donee's will, read with reference to the property which he owned and other circumstances existing at the time of the formulation, indicate that the donee understood that he was disposing of the property covered by the power, to that extent such gifts constitute appointments. Other authorities are to the effect that an intention to exercise appears by words, acts,

or deeds demonstrating the intention. It is not necessary that the exercise of the power be set forth in definite words. We have reached the conclusion, after a study of the respective wills, that an intention to exercise the power of appointment in the will of Mary Stork is apparent and manifest.

A further reason why we feel that there has been an exercise of the power is that it is shown that Mary Stork, on December 20, 1934, which was approximately a year and a half prior to July 1936, when her will was executed, indicated by an application she made to the court relative to the control of the real estate held by the trustee of her father's estate that she did not believe she owned any real property.

It has been suggested that there might be an exercise of the power of appointment in connection with the real estate mentioned in the Mary Stork will, and to that extent the power of appointment would be effectual, but that it did not apply to the personal property held in the trust estate of her father. It is our conclusion that, under all the facts and circumstances shown, and after careful consideration of the two wills, there was an exercise as to the power of appointment both as to the real and the personal estate held in the trust estate established by the father's will.

To summarize our conclusions, we find and hold (1) that there was no reference to the power of appointment given to Mary Stork definitely set forth in her will (2) there was a reference to the real estate which was the subject on which the power could be and was executed (3) the provision as to the trusteeship over the residuary property mentioned in the will of Mary Stork would be ineffectual and inoperative if not applicable to the property in the William Stork trusteeship (4) the will of Mary Stork, as far as the bequests therein noted, limited their payment to the proceeds of her personal property, and (5) the trusteeship set up in the sixth paragraph of the Mary Stork will is not alone a residuary clause but provides for a trust estate, and it is not similar to general residuary clauses which have been held not to constitute an exercise of a power of appointment.

Consequently, we hold that there was an exercise of the

power of appointment given by the will of William Stork by reason of the provisions in the will of Mary Stork, except that the payment of the bequests is limited to the proceeds of her personal property.

The case of In. re Wills of Proestler, supra, does not conflict with our holding in this case. In that case the question presented was whether a residuary clause alone indicated and demonstrated an intention to exercise a power of appointment. We there held that it did not. The facts and the wills in the two cases are not similar.

Some of the cases that bear upon the question presented in this appeal, and wherein comment is made upon the necessary evidence to indicate an intention to exercise the power of appointment given in a will, are Funk v. Eggleston, 92 Ill. 515, 34 Am. Rep. 136; South v. South, 91 Ind. 221, 46 Am. Rep. 591; Blake v. Hawkins, 98 U. S. 315, 25 L. Ed. 139; Warner v. Connecticut Mut. L. Ins. Co., 109 U. S. 357, 3 S. Ct. 221, 27 L. Ed. 962; Lee v. Simpson, 134 U. S. 572, 10 S. Ct. 631, 33 L. Ed. 1038; Camden Safe Deposit & Tr. Co. v. Fitler, 123 N. J. Eq. 245, 197 A. 249; Reed v. Hollister, 44 Cal. App. 533, 186 P. 819. See, also, annotations found in 32 A. L. R. 1397, 91 A. L. R. 455, 127 A. L. R. 255.

We have given consideration to the several propositions presented by the appellants, and the cases cited, but have not commented upon them in detail. We have concluded that the statements herein made are decisive of the issues. Upon a review of all the matters in controversy and the authorities, it is our conclusion that the decree of the trial court should be affirmed in part and reversed in part. The cause is remanded to the district court for the entry of a decree in conformity with this opinion.—Affirmed in part; reversed in part and remanded.

GARFIELD, C. J., and SMITH, MANTZ, MILLER, MULRONEY, BLISS, and HALE, JJ., concur.