In the Matter of the TRUST of Anne Hamilton KILLIAN, Trust Agreement of March 4, 1959, for Benefit of John Richard Killian.

Kathleen KILLIAN, Richard Killian, and Deborah L. Killian Walden, Appellants,

v.

Jan Barbour KILLIAN, Individually and as Administrator of the Estate of John R. Killian, Deceased, Appellee.

No. 89–312.

Supreme Court of Iowa.

July 18, 1990.

Jay M. Shriver and James J. Brandt of Pappajohn, Shriver, Eide & Nicholas, Mason City, for appellants Kathleen Killian and Richard E. Killian.

H. Edward Beatty and Gerald Lyell Fatka of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellant Deborah L. Killian Walden.

William H. Carmichael and Lawrence E. Blades of Blades, Carmichael, Rosser & Benz, Cedar Rapids, for appellee.

NEUMAN, Justice.

This appeal involves a challenge to the trial court's interpretation of an irrevocable inter vivos trust agreement and its determination of the scope of a trust beneficiary's testamentary power of appointment under the trust. The controversy centers on a dispute between three of the beneficiary's children and their stepmother who is the beneficiary's second wife and administrator of his estate. We transferred the case to the court of appeals which, on a divided vote, reversed the rulings entered by the district court. We granted further review and now vacate the decision of the court of appeals and affirm the judgment of the district court.

Our review of this equity action is de novo. Iowa R.App.P. 4. Although we are not bound by the trial court's factual findings, we give weight to them, particularly with regard to the credibility of witnesses. Iowa R.App.P. 14(f)(7); *Russell v. Johnston*, 327 N.W.2d 226, 228 (Iowa 1982).

Before relating the facts, we briefly review the well-established principles that guide our resolution of this controversy. The polestar of our analysis is the rule that the testator's (or, in this case, the settlor's) intent must prevail. *Hollenbeck v. Gray*, 185 N.W.2d 767, 769 (Iowa 1971). That intent is to be determined from the language of the instrument, the scheme of distribution, and the facts and circumstances surrounding the document's execution. *First Nat'l Bank of Dubuque v. Mackey*, 338 N.W.2d 361, 363 (Iowa 1983). Courts should resort to technical rules of construction only if ambiguous language in the will or trust creates uncertainty about the maker's intent. *Mackey*, 338 N.W.2d at 363; *Hollenbeck*, 185 N.W.2d at 769. With these principles in mind we review the pertinent documents and the evidence received by the trial court relative to their interpretation.

Anne Hamilton Killian established an irrevocable inter vivos trust in 1959 following the death of her father, James Hamilton, who had been the principal shareholder and president of Merchants National Bank in Cedar Rapids. The trust corpus consisted of assets received by Anne through inheritance from her father, and the trust provided that she would receive the net income during her lifetime. Upon her death, one-third of the trust estate was set aside for the use and benefit of her husband, Richard. The remaining two-thirds was divided in two equal trusts: one for Anne's daughter, Joan Killian Hunter, her spouse and descendants, and one for Anne's son, John Richard Killian, his spouse and descendants. John's trust is the focus of this litigation.

The Anne Killian Trust provided, in pertinent part, that distributions of income and principal were to be made at the trustee's sole discretion as needed for the "adequate health, maintenance, education and support of John Richard Killian, his wife, and descendants, taking into account any and all other property and income available to them." The trust went on to provide:

Notwithstanding any of the other terms and provisions hereof, John Richard Killian shall have the right and power to appoint by his will in trust or outright to his wife any amount not in excess of one-third (⅓) of John Richard Killian's share of the residuary trust estate as of the time of the death of said John Richard Killian.

When Anne established the trust in 1959, John was married to Donna Killian. They were the parents of four children, three of whom are the appellants in this action. John and Donna were divorced in 1969. Eight years later, John married Jan Barbour. They remained married until January 1988 when John died unexpectedly of a heart attack at age fifty-five. Jan is the sole beneficiary under John's will and the administrator of his estate.

John's will bequeathed to Jan Barbour Killian all of his estate, including "any and all property over which or concerning which I may have any general or special power of appointment, and specifically, the power of appointment contained in the Anne Hamilton Killian Trust." A codicil to John's will added to his spouse's bequest the following:

> It is my intent to give to my wife, JAN BARBOUR KILLIAN, all of my interest in the ANNE HAMILTON KILLIAN Trust that is transferable by me either during my life or at my death, it being my understanding that I have the power to appoint by my Will, in trust or outright, to my wife, any amount not in excess of one-third (⅓) of my share of the residuary trust estate as the same is constituted at the time of my death.

When John died in 1988, the trustee (Merchants National Bank) sought direction from the court about (1) whether John's exercise of his power of appointment to Jan was intended to be outright or in trust, and (2) what interest, if any, Jan retained in the remainder of the Anne Killian Trust. The trustee also requested a lien against Jan's interest in the proceeds of the trust to indemnify it for attorney fees incurred in the defense of separate litigation commenced by John and Jan (prior to John's death) for alleged mismanagement and breach of fiduciary duties.

Prior to hearing on these matters, three of John's children (appellants Kathleen Killian, Richard Killian, and Deborah Killian Walden) raised an additional issue. They claimed that their father could not validly exercise his power of appointment in favor of Jan Barbour Killian, either outright or in trust, because she was not the "wife" to whom Anne Killian referred when her trust was executed in 1959. The "wife" Anne intended to benefit, appellants contend, was their mother Donna Killian. Over the administrator's objection that this additional issue was untimely raised, the court joined the issue for trial.

At trial, the court heard testimony from present and former Merchants National Bank trust officers, the attorney who drafted the Anne Killian Trust in 1959, John's former wife Donna Killian, and Jan Barbour Killian. Having heard this evidence, the court made four rulings:

1. Anne Killian did not intend the term "wife" to mean John's spouse when the trust was executed, but rather she meant the person to whom John was married when the power of appointment took effect;

2. John exercised his power of appointment to Jan outright, not in trust;

3. Jan remains entitled to distributions, in the trustee's sole discretion, from the remaining two-thirds of the trust; and

4. Merchants National Bank is not entitled to a lien against Jan's trust distribution for attorney fees expended on unrelated litigation.

The court of appeals, affirming in part and reversing in part, agreed that Jan is the proper spouse for purposes of interpreting John's power of appointment. It decided, however, that the power could be exercised only in trust and limited by the discretionary distribution scheme in place during John's life. It also held that once John died, Jan was no longer his "wife" for purposes of continued distributions under the trust. Because the court of appeals ruled that Jan was not entitled to any principal distribution, it did not reach the lien issue. Upon application by Jan Barbour Killian, individually and as administrator of the John Killian Estate, we granted further review.

## A. *Meaning of the Term "Wife"*

■ The threshold question is whether the trial court correctly determined that Jan Barbour Killian is entitled to benefit from the power of appointment granted by the Anne Killian Trust in favor of John Killian's "wife." Appellants argue that Donna Killian—John's wife at the time the trust was executed—was the intended beneficiary of Anne's trust. They argue that Anne's intent to benefit her may be inferred from (1) the close relationship that developed between them, and (2) Anne's desire to benefit her descendants, an intent

that would be thwarted if someone other than the appellants' mother would inherit.

Evidence at trial revealed that Anne did not entirely approve of John's marriage to Donna but over the years Anne and Donna became quite close, visiting regularly by telephone, enjoying luncheon dates, and playing bridge. It is also undisputed that Anne never knew Jan Barbour for Jan and John were not married until fourteen years after Anne's death. As for whether Anne expressed an intent to benefit Donna to the exclusion of any subsequent "wife" of John Killian, however, the attorney who drafted the trust testified that he could recall no discussion on the issue. The record also discloses that Jan received principal and income distributions from the trust, without objection by the appellants, prior to John's death.

Appellants cite several cases from other jurisdictions which apply the technical rule that the generic term "wife" refers to the beneficiary's wife at the time the will was executed rather than a subsequent wife. *See, e.g., In re Eakins*, 79 Misc.2d 626, 629, 360 N.Y.S.2d 940, 944 (1974); *Matheson v. American Trust Co.*, 246 N.C. 710, 100 S.E.2d 77, 79–80 (1957); *In re Schluechterer's Estate*, 90 N.Y.S.2d 867, 870 (1949). This technical rule, however, is not applied without qualification. In each of the cited cases, the court recognized that the technical rule applies only "in the absence of an expression of a contrary intent." *Eakins*, 360 N.Y.S.2d at 944. The *Eakins* court reemphasized this point by stating that "the question is ... one of intent and the court must ... search within the four corners of the will to determine that intent." *Id.* In *Matheson*, the court applied the technical rule only because

> [n]othing appears in the will or in the attendant circumstances surrounding the testator, at the time he made it, to indicate he had in mind as a beneficiary any wife ... except the one to whom he was then married.

*Matheson*, 100 S.E.2d at 79 (emphasis added); *see also* 80 Am.Jur.2d *Wills* § 1224, at 338 (1975) (stating that technical rule applies "unless it is clear from the language

of the will and the accompanying circumstances that it was the testator's intention that the gift should not go [to the original wife]").

Like the district court, we find the language of the trust agreement itself the most persuasive and reliable indicator of Anne's intent. Anne's use of the generic terms "wife" and "husband" when referring to her children's spouses stands in stark contrast to the way she specifically names her own children, Joan and John. This lack of reference to specific individuals strongly suggests that Anne did not intend to limit the exercise of John's power of appointment to his first wife, Donna. Instead, because the power was designed to operate solely in the future, it reflects Anne's desire that the trust agreement accommodate her children's changing life circumstances. Anne's cognizance of the likelihood of change is reinforced by her awareness of her daughter's divorce and remarriage prior to execution of the trust. *See In re Buzby's Estate*, 386 Pa. 1, 9, 123 A.2d 723, 726–27 (1956) (refusing to apply technical rule because "[t]he words used by the testator in the will ... are plain and simple," and according to "their usual and ordinary meaning, ... the conclusion is inescapable that the word 'wife' ... was intended to mean the wife surviving [the testator]"); G. Bogert, *Trusts and Trustees* § 187, at 309 (rev. 2d ed. 1979) (stating that gift to beneficiary for life with remainder interest to beneficiary's wife "has usually been construed to mean a gift of the remainder to the woman to whom the beneficiary was married at the time of his death....").

We conclude that the trial court correctly overruled appellants' challenge to Jan's status as the "wife" in whose favor the power of appointment could be exercised.

### B. *Power of Appointment Outright or in Trust*

A trust officer testified at trial about the trustee's uncertainty over whether John intended to exercise his testamentary power of appointment in favor of Jan outright or in trust. The uncertainty is created by the

fact that John's will and codicil refer to the power given him under his mother's trust but, arguably, make no specific election except to bequeath to Jan "all" of his interest in the trust. The trial court, without elaboration, determined that the bequest was outright. The court of appeals injected a new issue into the controversy by concluding that Jan could receive no more than John had to convey, that is, one-third of his lifetime right to principal and income distributed in the sole discretion of the trustee. It appears, however, that the court of appeals misperceived the nature of the interest John was entitled to convey.

■ It is well settled that a lifetime beneficiary of discretionary trust income and principal may also be the donee of a testamentary power of appointment over a remainder interest in fee. *See generally Sohosky v. Commissioner,* 473 F.2d 810, 812–13 (8th Cir.1973) (life tenant can convey larger interest than tenant possesses if donor clearly intended such a result); *Bussing v. Hough,* 237 Iowa 194, 199, 21 N.W.2d 587, 590 (1946) (life interest in one-third of estate could be coupled with power of disposition over remainder); *In re Stork,* 233 Iowa 413, 416, 9 N.W.2d 273, 274 (1943) (enforcing trust provision which granted beneficiary both life estate and testamentary power of appointment over the fee); *Nelson v. Horsford,* 201 Iowa 918, 920, 208 N.W. 341, 342 (1926) (stating it is "well settled" that life estate may be attached to right to dispose of entire fee); *Paxton v. Paxton,* 141 Iowa 96, 98, 119 N.W. 284, 285 (1909) (stating that life estate may be "coupled with a provision giving the devisee unlimited power of disposal"); 62 Am.Jur.2d *Powers of Appointment and Alienation* § 178, at 258 (1990) (donee of power of appointment may convey fee even if donee only possesses life estate).

■ Although John's interest in the trust during his lifetime was limited to the trustee's discretionary disbursements, the "notwithstanding" clause of Anne's trust expanded the interest he could convey by his will. In other words, Anne's use of the phrase "notwithstanding any other terms

and provisions hereof" in relation to the power of appointment signals Anne's intention that John's testamentary appointment powers should not be restricted by other limitations in the trust.

■ As for whether John intended his testamentary power to benefit Jan outright or in trust, we think the trial court correctly determined that the bequest is outright. The fact that neither John's will nor his codicil make any provision for the establishment of a trust to receive and administer assets suggests strongly that no trust for Jan was intended. Moreover, Jan testified that she and John were dissatisfied with the management of the Anne Killian Trust during John's lifetime and, in fact, sued the trustee for breach of fiduciary duties, fraud, and mismanagement. Given this circumstance, John would not have wanted Jan's bequest similarly controlled.

■ We are led to the same conclusion if we apply the plain and simple meaning of the language used by John in his will. John's expressed wish that Jan receive "all of my estate" and "all of my interest in the Anne Hamilton Killian Trust" means that his bequest to her was intended to be complete and unlimited. *See Webster's Ninth New Collegiate Dictionary* 70–71 (1986) (defining "all" as "the whole amount or quantity" and "as much as possible"). No words of limitation appear in the instrument to suggest a contrary intention. We vacate the court of appeals' decision on this issue and affirm the trial court.

C. *Surviving Spouse's Interest in Remaining Trust Assets*

■ Prior to John's death, Jan received discretionary distributions of income and principal from the Anne Killian Trust pursuant to its direction that the trustee determine what is "needed for the adequate health, maintenance, education and support of said John Richard Killian, his wife, and descendants, taking into account any and all other property available to them." The question is, once John exercised his power to appoint one-third of the trust to Jan outright, may further distributions from

the trust be made to her in the trustee's discretion? The trial court ruled that Jan remains a beneficiary under the trust. We affirm this ruling.

The principal argument favoring the trial court's decision is the fact that the testator made no provision for termination of spousal trust benefits in the event John exercised the power of appointment given him. Appellants make a strong argument that Anne intended primarily to benefit her lineal descendants and would not have wanted a spouse to share in more than one-third of the trust. The fact remains, however, that the simple language which would have accomplished that result is missing from the instrument. Instead, the trustor gave the trustee broad discretionary power to make distributions based on the beneficiaries' needs and other available income. As a practical matter, this may mean that Jan will share no further in the trust.

We think the trial court chose the wisest course by following the wishes of the trustor as expressed in her trust. The court of appeals' opinion, which reached a contrary result on the ground that John's death terminated Jan's status as a "wife" under the trust, must be vacated.

D. *Proposed Lien*

In order to secure the payment of attorney fees and costs in an unrelated suit by John's estate and Jan over the bank's alleged mismanagement of the Anne Killian Trust, the bank asked the court to establish a lien in its favor against whatever assets Jan receives in connection with this controversy. The court declined to do so, presumably on the ground that the collateral litigation was not presently before it. Upon the bank's motion under Iowa Rule of Civil Procedure 179(b), however, the court amended its ruling to clarify that it made no finding whether Merchants National Bank will be entitled to attorney fees and costs for defending the other litigation. The bank did not appeal. Appellant Deborah Killian Walden has appealed, however, claiming that the court's refusal to rule on the attorney fee issue prior to distribution of assets to Jan Killian unjustly places the remaining beneficiaries' assets at risk for payment of the entire judgment sought.

The trustee's entitlement to indemnification for attorney fees turns on whether its defense of the litigation is for its personal protection against claims of malfeasance or for expenses properly incurred to defend the management of the trust. *Compare In re Estate of Brady*, 308 N.W.2d 68, 74 (Iowa 1981) *with In re Estate of Swanson*, 240 Iowa 1011, 1016, 38 N.W.2d 652, 655 (1949); *see also* Restatement (Second) of Trusts § 244, at 613–14 (1959). The record before us contains no evidence upon which the trial court could resolve these issues. Questions of relevancy aside, the record is silent concerning the status of the collateral litigation against the trustee, the recovery sought, or the bank's legal and factual basis for asserting a lien. The burden was on the bank to prove its claim. Iowa R.App.P. 14(f)(5). Under this record, it has failed to sustain its burden and the trial court properly denied its request.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT AFFIRMED.

All Justices concur except CARTER, J., who takes no part.