**IN THE COURT OF APPEALS OF IOWA**

No. 23-1585
Filed July 24, 2024

**IN THE MATTER OF THE TRUST OF BOBBY DEAN CHURCHILL,**

**NATALIE ANN CHURCHILL,**
    Appellant.
_____

Appeal from the Iowa District Court for Taylor County, Thomas P. Murphy,

Judge.


A grandchild appeals the district court's order interpreting her grandfather's

trust and denying her request to remove the trustee. **AFFIRMED.**


William Bracker, Council Bluffs, for appellant.

Bradford L. Davis, Council Bluffs, for appellee.


Considered by Badding, P.J., Langholz, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**LANGHOLZ, Judge.**

A few months before his death in July 2014, Bobby Churchill Sr. executed his will. That will creates a trust to hold 280 acres of farmland "for the benefit of my daughters, Kathy and Nancy, for their lifetime." And it provides: "Upon the death of both of my daughters the real estate shall pass to the living heirs of my two daughters. The trust shall continue until both girls are deceased."

Consistent with the will, Nancy and Kathy split the farmland's income as co-beneficiaries of the trust while they were both alive.[1] But when Kathy died in 2020, Nancy interpreted the terms of the trust to mean that she was now the sole beneficiary and entitled to receive all the income until her death. Kathy's only daughter, Natalie, disagreed. So Natalie petitioned the district court to declare that the trust's terms entitle her to receive her mother's share of the farmland's income until the trust terminates on Nancy's death. *See* Iowa Code § 633A.6202(2)(a) (2022) (authorizing petitions to "[c]onstrue and determine the terms of a trust"). Natalie also asked the court to remove Nancy as trustee, accusing Nancy of mismanaging the farm. *See id.* §§ 633A.6202(2)(j); 633A.4107 (authorizing petitions to remove trustee). Nancy denied any mismanagement and likewise denied that Natalie had any interest in the farmland until both she and Kathy died.

The dispute was tried in equity and largely involved witnesses speculating about which outcome Churchill would have wanted. Indeed, the attorney who drafted Churchill's will, Sanford Turner, testified. Churchill and Turner never discussed whether the farmland's income should pass to one of his daughters'

---

[1] Churchill's son Bobby Jr. originally became trustee. For reasons that are interesting yet unrelated to this appeal, Nancy later replaced Bobby Jr. as trustee.

heirs while the other daughter remained alive. Still, Turner believed his language created a situation akin to tenancy in common. And thus he believed Natalie should receive her mother's undivided share of the farmland's income. Turner also emphasized that Churchill's foremost interest was keeping the farmland in the family and preventing his children from quickly selling it upon his death. Nancy and Bobby Jr., for their part, each offered conflicting views of who was entitled to the trust's income.

The district court sided with Nancy on all issues. The court first concluded that the will's language was unambiguous—the trust was for the benefit of Nancy and Kathy for their lifetimes. The court noted that "the document uses the word 'both' twice: once where it mentions when the real estate passes to Bobby Dean Churchill's grandchildren; and again where the document describes when the trust terminates." And so the court reasoned, "[t]he children of Kathy and Nancy receive no benefits from the land held in trust until 'both' Nancy and Kathy die." While the court recognized extrinsic evidence was unnecessary, it noted that its interpretation aligned with Turner's testimony that Churchill's core intent was to keep the farmland in the family and Turner's "lack of recollection about any discussions of income going to grandchildren."

The court also denied Natalie's request to remove Nancy as trustee. It found that Natalie had failed to prove Nancy's reports were inaccurate, that Nancy did not have a duty to maximize profits while she alone was recouping those profits, and that she was fulfilling her obligation "to ensure that the land is in good condition when it passes" to Natalie and Churchill's other grandchildren.

Finally, the court decided that Nancy was entitled to reasonable attorney fees under Iowa Code section 633A.4507. And it ordered "that if she desires those fees, then within fifteen days Nancy may file an attorney's fee request" and "[w]ithin ten days after that, Natalie may file a resistance and request for hearing." Nancy filed such a timely request for an amount "that the Court deems just and equitable," and attached an itemization totaling $4130 in fees. Natalie objected to the amount and argued "that reasonable attorney fees in this case would be $2,500." Nancy then filed a reply reiterating her request and highlighting that Natalie did not request a hearing and admitted that some amount was reasonable. But the court did not issue an order resolving the dispute or awarding Nancy any fees before Natalie filed her notice of appeal.

On appeal, Natalie challenges the district court's interpretation of the trust, its refusal to remove Nancy as trustee, and the attorney-fee award. But the district court got it right on the two issues properly before us. The terms of the trust unambiguously give no right to Natalie until "both" of Churchill's daughters "are deceased." The court did not abuse its discretion in refusing to remove Nancy as trustee. And we cannot consider Natalie's attorney-fees arguments because the district court has not made a final attorney-fee award to Nancy and Natalie never requested fees. We thus affirm.

## I.     Natalie's Interest in the Trust

We review the district court's declaratory ruling interpreting the terms of Churchill's will that govern the trust de novo. *See In re Will of Uchtorff*, 693 N.W.2d 790, 793 (Iowa 2005); *see also* Iowa Code §§ 633.33, 633A.6101; Iowa R. App.

P. 6.907. The principles that guide our review are firmly entrenched, and this case serves as a reminder of why they have remained so durable.

We honor the testator's intent. *In re Tr. of Killian*, 459 N.W.2d 497, 499 (Iowa 1990). And we locate that intent not by asking "what the testator meant to say" but by asking "what the testator meant by what he or she did say." *In re Tr. of Cross*, 551 N.W.2d 344, 346 (Iowa 1996). We further "assume the testator selected the language adopted to express his meaning and he knew and appreciated the effect of the language used in his or her will." *Id.* at 347. At bottom, "[t]he terms of a trust shall always control." Iowa Code § 633A.1105.

Under Churchill's executed language, he placed 280 acres of farmland in trust "to be held for the benefit of my daughters, Kathy and Nancy, for their lifetime. Upon the death of both of my daughters the real estate shall pass to the living heirs of my two daughters. The trust shall continue until both girls are deceased." Like the district court, we find this language unambiguous. Churchill gave his daughters and grandchildren discrete interests in the farmland. The daughters would never own the farmland—they could not sell or dispose of the land but would benefit from its income only during their lifetimes. When the trust terminated upon both his daughters' deaths, his grandchildren would get title to the farmland and could choose whether to sell or benefit from its income.

Nearly seventy years ago, our supreme court addressed a similar trust term in *In re Will of Young*, 79 N.W.2d 376 (Iowa 1956). There, a woman created a trust to benefit her niece, and upon the niece's death the trust would be for the benefit of two co-beneficiaries for a period of twenty-one years. *Id.* at 377. If both co-beneficiaries died before the twenty-one years were up, the principal would be paid

to the niece's heirs. *Id.* One of the co-beneficiaries died while serving in World War II, before the niece died and thus before the co-beneficiaries began receiving any trust income. *Id.* After the niece died, the court considered whether the surviving beneficiary would get the entire trust income during the twenty-one years or if the deceased beneficiary's share of trust income would pass to his estate or surviving widow. *Id.*

The court reasoned that the cross-remainder theory best carried out the testator's intent as well as aligned with other jurisdictions and leading treatises. *See id.* at 380. Under that approach, "if two or more persons are to receive a life estate and one departed this life prior to the death of the first life tenant, the surviving life tenant is entitled to all income." *Id.*; *see also id.* ("[A] majority of the cases have held that the share of the deceased life beneficiary passed to the cobeneficiary or cobeneficiaries, upon the theory either that the language of the will indicated an intention to create a joint estate in the life beneficiaries, with the accompanying right of survivorship, or that the gift must be regarded as one to a class or as one creating cross remainders by implication." (citation omitted)). Thus the surviving beneficiary received all trust income for the twenty-one years, and the deceased beneficiary's share did not pass to his estate or widow. *Id.*

So too here. Under the trust's plain language, it created life estates for Kathy and Nancy, who would receive the trust's income. If one daughter dies, her life estate terminates and the trust continues for the benefit of the surviving daughter. When both daughters die, the trust dissolves and ownership passes to the grandchildren. The daughters were never intended to hold title and the grandchildren were never intended to receive trust income. *See also* Restatement

(Second) of Trusts § 143 (Am. L. Inst. 1959) ("If a trust is created under which the income is payable to two or more beneficiaries and the principal is payable to another on the death of the survivor of the income beneficiaries, and one of them dies, the survivor or survivors are entitled to the income until the death of the last survivor, unless the settlor manifested a different intention.").[2]

Natalie offers no contrary reading of this language, instead jumping straight to ambiguity. *See generally In re Steinberg Fam. Living Tr.*, 894 N.W.2d 463, 471 (Iowa 2017) (explaining patent ambiguity exists "when the provision is uncertain, doubtful, or obscure on its face" and latent ambiguity exists "when the language is clear on its face, but something outside the trust renders the meaning uncertain, doubtful, or obscure"). She argues the instrument contains no express language directing the trust income upon one daughter's death and such a failure creates latent ambiguity. As Natalie sees it, the "rushed" and "anxious" drafting of Churchill's will left some of his desires on the cutting-room floor. And because Churchill would have wanted her to have her mother's share of the trust income, we can confidently fill in the gap ourselves.

But Natalie's approach to extrinsic evidence exceeds our deep-seated precedent. We do not set aside plain language in search of wrongs to right. *See Guilford v. Gardner*, 162 N.W. 261, 264 (Iowa 1917) ("The meaning being plain

---

[2] While the Third Restatement advocates for a different approach, it acknowledges that the "slightly prevalent view in the cases still appears to be to allow the surviving income beneficiary or beneficiaries to receive the deceased beneficiary's share of income." Restatement (Third) of Trusts, § 49 cmt. c-c(3) (Am. L. Inst. 2007). Natalie does not rely on the Third Restatement, *In re Will of Young* aligns with the Second Restatement, and, regardless, we believe Nancy receiving all trust income best effects Churchill's intent. So we do not consider the Third Restatement further.

and the intent being lawful, there is no room left for controversy. It is not for the court to question or consider the absolute justice of the condition; its only function is to ascertain the testator's intent and give it effect."). Nor may challengers wield extrinsic evidence to create new terms or construct a narrative that is missing from the instrument itself. *See In re Est. of Kalouse*, 282 N.W.2d 98, 104–06 (Iowa 1979); *Cross*, 551 N.W.2d at 348.

Yet Natalie seeks to do just that. She argues her grandfather at first wanted to disinherit his daughters and leave everything to his grandchildren, so we should construe the trust's terms to favor the grandchildren.[3] And she rests heavily on Turner's belief that the trust's income should be passed down to Natalie. But that is not what the trust says or does. The trust does not favor Churchill's grandchildren over his daughters, nor does it pass any trust income to the grandchildren. Instead, the trust provides his daughters and grandchildren with discrete interests in the farmland. So that is the intent we preserve and enforce because "courts have no more authority to make wills for the dead than contracts for the living." *In re Est. of Staab*, 173 N.W.2d 866, 870 (Iowa 1970); *see also In re Est. of Rogers*, 473 N.W.2d 36, 40 (Iowa 1991) ("We will not, from oral

---

[3] On appeal, Natalie makes a related argument that, given her extrinsic evidence about Churchill's purported wishes, we should find that failing to direct the trust income to the non-surviving daughter's heirs was inadvertent and imply a gift ourselves. *See Russell v. Johnston*, 327 N.W.2d 226, 230 (Iowa 1982) (discussing gifts by implication "[w]hen a testator's will clearly reveals a general plan or intention as to the disposition of his property" (citation omitted)). But Natalie did not make this argument below. And even if she had, the will as a whole reveals no intent for Churchill's grandchildren to receive anything besides title to the farmland upon his daughters' deaths. In that regard, elsewhere in Churchill's will he places other land in trust to benefit his son, with title to pass to his son's heirs upon the son's death. So across his will, Churchill was consistent—his children receive trust income and his grandchildren later receive title.

testimony, make a will the testator perhaps intended to, but in fact did not, make."); *Kalouse*, 282 N.W.2d at 104 (upholding will's language creating a class gift despite scrivener's testimony that testator intended to make individual gifts). We thus affirm the district court's ruling that Natalie is not entitled to her mother's share of the trust income.

## II. Nancy's Removal as Trustee

We next consider Natalie's petition to remove Nancy as trustee. "A trustee may be removed" if she "has committed a material breach of the trust." Iowa Code § 633A.4107(2)(a). Among a trustee's duties is the responsibility to "administer the trust with the reasonable care, skill, and caution as a prudent person would." *Id.* § 633A.4203. She must "administer the trust solely in the interest of the beneficiaries" and must "act with due regard to their respective interests." *Id.* § 633A.4202(1). And she must exercise her "discretionary power[s] within the bounds of reasonable judgment and in accordance with applicable fiduciary principles and the terms of the trust." *Id.* § 633A.4214.

When considering an action to remove a trustee, a court must consider whether "there is sufficient reason to do so to protect the best interests of the trust and its beneficiaries." *Schildberg v. Schildberg*, 461 N.W.2d 186, 191 (Iowa 1990). The removal power is generally reserved for trustees who endanger the trust. *Id.* So removal is unwarranted "when the overall performance of the trustee in the interest of the trust outweighs a breach of the trust agreement and the overall interests of the beneficiaries will be better served by having the trustee continue." *Id.* Because this case was tried in equity and yet "the removal of a trustee is a matter largely within the discretion of the district court," "we examine the record de

novo to determine whether there was an abuse of discretion by the trial court in refusing to remove the trustee." *Id.* at 190.

We agree with the district court that Natalie has not shown that Nancy materially breached the trust or has otherwise endangered its corpus. Nearly all of Natalie's assigned breaches stem from Nancy not reaping as much profit from the farmland as possible. And true, based on the evidence it seems Natalie could be charging more for rent. But as the sole income beneficiary, Nancy's choice to charge a lower rent to a trusted and long-term tenant only harms herself—Natalie and the other grandchildren have no right to any share of the current profits. Nor has Natalie proven any damage to the farmland that would jeopardize the grandchildren's future interests in the corpus. Indeed, Natalie offered no evidence that the farmland has in fact been neglected or that any problems have gone unfixed.[4] Rather, the minimal evidence relating to the state of the farmland showed that the current tenant takes good care of the land.

And Natalie's last assertion that Nancy engaged in improper self-dealing by refusing to split the trust income has no merit. As already shown, Kathy's share of the trust income did not pass to Natalie upon Kathy's death, so Nancy was entitled to keep all trust income as the surviving beneficiary. Thus, Nancy has not breached any of her duties and the district court did not abuse its discretion in refusing to remove her as trustee.

---

[4] In her brief, Natalie recounts several factual allegations related to Nancy's purported mismanagement without any accompanying citations to the record. We have no duty to consider uncited assertions. *See Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 866 (Iowa 2001).

### III.    Trial and Appellate Attorney Fees under Chapter 633A

Finally, Natalie challenges the district court's order compelling her to pay Nancy's reasonable attorney fees.  Courts indeed have discretion to award attorney fees in trust proceedings.  *See* Iowa Code § 633A.4507.  But the district court's attorney-fee decision is not ripe for appeal.

The district court's ruling only stated that Nancy "should receive reasonable attorney's fees for this litigation" and invited the parties to litigate the issue within fifteen days.  Nancy promptly moved for reasonable fees, and Natalie objected to the claimed amount.  But while the attorney-fee application was pending, Natalie filed her notice of appeal and the district court took no further action in the case.  *But see* Iowa R. App. P. 6.103(3) (explaining district courts retain "jurisdiction to consider an application for attorney fees notwithstanding the appeal of a final order or judgment in the action").  So there is nothing yet for us to review—Natalie has only appealed from the final ruling on her petition—any challenge to a later award of attorney fees is "premature."  *In re Marriage of Kisting*, 6 N.W.3d 326, 337 (Iowa Ct. App. 2024); *see also Iowa State Bank & Tr. Co. v. Michel*, 683 N.W.2d 95, 110 (Iowa 2004) (holding that orders awarding attorney-fees after the filing of a notice of appeal must be separately appealed).

Natalie also argues that "*she* should be awarded attorney fees both for the district court action and for this appeal" because she should succeed on the merits of this appeal.  (Emphasis added.)  But she did not preserve error on her claim for trial attorney fees by making such a request or getting a ruling from the district court on it.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised

and decided by the district court before we will decide them on appeal.").[5]  And because we affirm the district court on both issues before us, we decline to award Natalie appellate attorney fees.  *See In re Tr. No. T-1 of Trimble*, 826 N.W.2d 474, 491 (Iowa 2013) (discussing factors to consider when awarding attorney fees under section 633A.4507, including "result obtained by the litigation").

**AFFIRMED.**

---

[5] On this issue—and repeatedly throughout her brief—Natalie argues she preserved error by filing a notice of appeal.  As we have said many times, filing a notice of appeal does not preserve error—litigating the issue before the district court does.  *See In re T.G.*, No. 23-0979, 2023 WL 5605626, at *1 n.1 (Iowa Ct. App. Aug. 30, 2023) (noting we have clarified this point "almost seventy times" in the last ten years); *see also* Iowa R. App. P. 6.903(2)(a)(8) ("Filing a notice of appeal does not preserve an issue for appeal, and citing to the notice does not satisfy" the requirement to include in the appellant's brief "[a] statement addressing how the issue was preserved for appellate review.").