# IN THE SUPREME COURT OF IOWA

No. 16–0380

Filed April 28, 2017

**IN RE STEINBERG FAMILY LIVING TRUST**

**DAVID L. STEINBERG,**

　　Appellee,

vs.

**STEVEN C. STEINBERG,**

　　Appellant.

---

Appeal from the Iowa District Court for Decatur County, Dustria A. Relph, Judge.

Two brothers, beneficiaries of a family trust, filed competing motions for summary judgment in this declaratory judgment action. The district court granted summary judgment to David and denied summary judgment to Steven. Steven appeals. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Erik W. Fern and Dale L. Putnam of Putnam, Fern & Thompson Law Office, P.L.L.C., Decorah, for appellant.

Tonita M. Helton of Helton Law Offices, PLLC, Leon, for appellee.

**ZAGER, Justice.**

In this declaratory judgment action, we are asked to decide whether we should recognize an exception to the doctrine of ademption[1] for real estate in a trust that was replaced through a like-kind tax exchange. In the alternative, we are asked to judicially adopt section 2–606 of the Uniform Probate Code involving ademption. Two brothers, the sole beneficiaries of the Steinberg Family Living Trust, brought competing motions for summary judgment regarding the distribution of property under the trust. The brothers, David and Steven, disagree as to whether a specific bequest was adeemed. Specifically, they requested a declaration of how a Minnesota farm should be distributed. While the Minnesota farm is now a part of the trust, it was acquired after the creation of the trust through a like-kind tax exchange of property. The property exchanged was specifically bequeathed to Steven. However, the acquired Minnesota farm is not specifically bequeathed to either beneficiary.

The district court held that the specific bequest was adeemed because the bequeathed parcel of land was no longer in existence or part of the trust assets. The district court further held that a piece of property that had been acquired in a like-kind tax exchange could not be substituted for the prior, specifically bequeathed parcel of property.

---

[1]*Black's Law Dictionary* defines "ademption" in a number of ways. An ademption occurs by "[t]he destruction or extinction of a testamentary gift by reason of a bequeathed asset's ceasing to be part of the estate at the time of the testator's death." *Ademption, Black's Law Dictionary* (10th ed. 2014). Ademption is also defined as the "[e]xtinction or withdrawal of a legacy by the testator's act equivalent to revocation or indicating an intention to revoke." *Ademption, Black's Law Dictionary* (4th ed. rev. 1968). In our cases, we have defined ademption as "a taking away" and generally use it to refer to removing or eliminating a specific bequest from a will or trust before the death of the testator. *In re Estate of Anton*, 731 N.W.2d 19, 23 (Iowa 2007).

Therefore, pursuant to a residuary clause of the trust, the Minnesota farm was ordered to be distributed equally between the two beneficiaries.

Additionally, the district court was asked to interpret Article 5, section B(1) of the trust. The district court found that this provision of the trust granting one brother the right to purchase or rent the other brother's specifically bequeathed property was ambiguous and conflicting. The district court declared that the provision granting Steven the option to purchase the Iowa farm from David, whether called a repugnancy or an inconsistency, was ineffective and struck it. The district court thereby granted summary judgment to David.

For the following reasons, we affirm the decision of the district court to the extent it declared the specific bequest to Steven was adeemed and to the extent it concluded the Minnesota farm was to be distributed equally between the brothers. We reverse the decision of the district court to the extent it granted summary judgment to David on the disputed trust provision. While we agree the trust provision was ambiguous, we also find that there are genuine issues of material fact which preclude the entry of summary judgment in favor of David. We remand to the district court for a trial on the disputed trust provision.

## I. Background Facts and Proceedings.

On February 18, 2000, Jack and Clarine Steinberg established the Steinberg Family Living Trust. They appointed themselves and their son, Steven Steinberg, to serve as cotrustees. The trust provided that Steven and their other son, David Steinberg, would serve together as cotrustees upon the deaths of both Jack and Clarine. In addition to ultimately serving as cotrustees, David and Steven were the only named beneficiaries. The trust was never amended by Jack or Clarine.

Jack passed away on August 22, 2011, and Clarine passed away on July 24, 2013. At Clarine's death, the trust became irrevocable and triggered the appointment of David as cotrustee. David was appointed cotrustee in April 2014. At the time of Clarine's death, the trust held several assets, including the two parcels of real estate at issue in this case. David and Steven disagree as to their respective rights to the two properties and how they should be distributed.

The first property, the Minnesota property, consists of approximately eighty acres of land and is legally described as

> The West Half of the Southeast Quarter of Section 34, Township 105 North, Range 19 West, Steele County, Minnesota, excepting therefrom the following tract: Parcel Number 1 of Steele County Highway Right of Way Plat filed in the Office of the County Recorder the 5th day of April, 2001, at 8:00 A.M. in Book 13 of Plats, page 278 as Instrument No. 288400.

The second property, the Iowa property, consists of approximately forty acres of land and is legally described as "The Northwest Quarter of the Northwest Quarter of Section 16, in Township 99 North, Range 26 West of the 5th P.M., in Winnebago County, Iowa." At the time of Clarine's death, the Minnesota property was appraised at $567,000. The Iowa property was appraised at $9500 per acre, which amounts to approximately $380,000.

> The trust paragraph at issue, Article 5, section B, provides,

> To the Trustors' son, David L. Steinberg, shall be distributed the house at 112 N. Mill Rd., Buffalo Center, IA, Lots 24, 25, & 26, Block 24, Buffalo Center, Winnebago County, IA and the NW1/4NW1/4 Sec. 16-99-26. To the Trustors' son, Steven C. Steinberg, shall be distributed the W1/2SW1/4 Sec. 16-99-26. Steven C. Steinberg shall be given the first right to purchase or rent David L. Steinberg's interest in the NW1/4NW1/4 Sec. 16-99-26 for $1500.00 per acre and can exercise this right at any time. All of the remaining Trust Estate is to be distributed as provided in Section C, or as

specified in the "Specific Distribution Schedule" attached hereto.

The parties agree that the "NW1/4NW1/4 Sec. 16-99-26" gifted to David refers to the Iowa property. Article 5, section C provides that Steven and David will have equal fifty percent shares of any remaining trust assets.

In 2008, while Clarine and Steven were cotrustees, the trust sold the Winnebago County, Iowa property described as "W1/2SW1/4 Sec. 16-99-26" (Winnebago property) and purchased the Minnesota property in a like-kind tax exchange. Therefore, at the time of Clarine's death, there were two parcels of land contained in the trust: the Iowa property and the Minnesota property. However, only the Iowa property was specifically gifted in the trust, to David. The Minnesota property was not mentioned anywhere in the trust.

Pursuant to the trust provision, Steven gave his notice of intent to purchase the Iowa property from David for $1500 per acre or approximately $60,000 for the forty acres. David responded by filing a declaratory judgment action on May 4, 2015, requesting that the district court clarify and interpret the trust as to the distribution of the two parcels of land remaining in the trust. In October, the parties filed competing motions for summary judgment. David's motion for summary judgment argued that the trust expressly gifted the Iowa property to him, subject to an option held by Steven to rent the property for $1500 per acre while David continued to own the property. David additionally argued that the Minnesota property should be split equally between himself and Steven under Article 5, section C of the trust. Steven's motion for summary judgment argued that the district court should issue a deed of trust for the Iowa property to him upon the payment of $60,000. Steven additionally argued that the Minnesota property should

be conveyed solely to him based on the like-kind tax exchange for the Winnebago property specifically devised to him and not split equally under section C.

On December 4, the district court held a hearing on the competing motions for summary judgment. On February 2, 2016, the district court issued its ruling granting David's motion for summary judgment on both issues. Correspondingly, the district court denied Steven's motion for summary judgment. The district court held that since the Winnebago property was no longer an asset of the trust, the specific bequest of it to Steven was adeemed. The district court did not recognize an exception to the doctrine of ademption for the like-kind tax exchange of property. The Minnesota property therefore fell under Article 5, section C of the trust, which provides for an equal fifty percent division of the property between David and Steven. The district court also held that the trust agreement expressly gifted the Iowa property to David and the gift was an absolute devise. The district court struck the later provision that allowed Steven to purchase the property and declared that the trust "expressly gifts the Iowa property to David L. Steinberg, subject to an option held by Steven C. Steinberg to rent the Iowa property for $1500.00 an acre for so long as David L. Steinberg may own the property." Steven appealed, and we retained the appeal.

## II. Standard of Review.

We review the district court's rulings on motions for summary judgment for correction of errors at law. *Roll v. Newhall*, 888 N.W.2d 422, 425 (Iowa 2016). "On review, 'we examine the record before the district court to determine whether any material fact is in dispute, and if not, whether the district court correctly applied the law.'" *Id.* (quoting *J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.*, 589 N.W.2d 256, 258 (Iowa

1999)). Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Iowa R. Civ. P. 1.981(3). A genuine issue of material fact exists "if reasonable minds can differ on how the issue should be resolved." *Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 701 (Iowa 2016) (quoting *Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 5 (Iowa 2008)). We view the record in the light most favorable to the nonmoving party. *Iowa Arboretum*, 886 N.W.2d at 701. In doing so, we grant the nonmoving party "all reasonable inferences that can be drawn from the record." *Roll*, 888 N.W.2d at 425 (quoting *Estate of Gray ex rel. Gray v. Baldi*, 880 N.W.2d 451, 455 (Iowa 2016)).

A declaratory judgment action to interpret a trust is tried in equity. *See* Iowa Code § 633.33 (2015); *see also In re Estate of Rogers*, 473 N.W.2d 36, 39 (Iowa 1991). Our review for the interpretation of a trust agreement tried in equity is de novo. *Rogers*, 473 N.W.2d at 39. Our interpretation of a trust is guided by the intent of the testator. *In re Trust Known as Spencer Mem'l Fund*, 641 N.W.2d 771, 774–75 (Iowa 2002). We determine intent based on the language of the trust itself, utilizing the ordinary and usual meaning of the words included. *Id.* at 775; *see also In re Trust of Killian*, 459 N.W.2d 497, 499 (Iowa 1990). We consider the document as a whole and reconcile all provisions of the trust when reasonably possible. *Rogers*, 473 N.W.2d at 39. We only resort to technical rules of construction to interpret a trust when the language utilized is ambiguous. *Id.*

**III. Analysis.**

**A. Minnesota Property.** The parties disagree as to the distribution of the Minnesota property. While the Minnesota property is

in the possession of the trust, it is not specifically bequeathed to either party in Article 5, section B. David argues, therefore, that the Minnesota property should be distributed under Article 5, section C, which provides that all remaining property of the trust shall be split equally between David and Steven. Steven argues the Minnesota property should be conveyed entirely to him because the property gifted to him in the trust (the Winnebago property) was exchanged for the Minnesota property in a like-kind tax exchange. Steven also argues that we adopted the Uniform Probate Code definition of ademption in *In re Estate of Anton*, 731 N.W.2d 19 (Iowa 2007). In the alternative, he argues we should adopt section 2–606(a)(5) of the Uniform Probate Code (UPC) to analyze questions of ademption.

1. *History of ademption under Iowa law.* In *Anton*, we summarized the history of the Iowa approach to ademption. Ademption means "a taking away" and generally refers to removing or eliminating a specific bequest from a will or trust before the death of the testator. *Id.* at 23; *see also* Joseph Warren, *The History of Ademption*, 25 Iowa L. Rev. 290, 292 (1940). Iowa has applied different theories of ademption throughout the years. *Anton*, 731 N.W.2d at 23–24.

In the early 1900s, we adopted the identity theory of ademption, which was a rigidly applied rule. *Id.* at 23. Under the identity rule, if a piece of specifically bequeathed property was not in the estate at the time of the testator's death, the bequest was adeemed. *Id.* We continued to apply this rule through the 1950s. *Id.*; *see also In re Estate of Sprague,* 244 Iowa 540, 546, 57 N.W.2d 212, 216 (1953); *In re Estate of Keeler,* 225 Iowa 1349, 1354–55, 282 N.W. 362, 365 (1938); *In re Estate of Bernhard,* 134 Iowa 603, 603, 112 N.W. 86, 86 (1907).

In the early 1960s, we began to depart from the rigid application of the identity rule and considered a number of cases under a "modified intention" approach. *Anton*, 731 N.W.2d at 23. Under this modified-intention approach, we considered the competence of the testator in our ademption analysis. *Id.* at 23–24. In *In re Estate of Bierstedt*, a guardian of an incompetent testator sold specifically bequeathed real estate without the testator's knowledge or consent. 254 Iowa 772, 774, 119 N.W.2d 234, 235 (1963). We held that there was a presumption of a lack of testamentary capacity because Bierstedt was incompetent at the time the land was sold. *Id.* Therefore, because he lacked testamentary capacity to change the terms in his will, the sale did not demonstrate the testator's intent to modify the will and no ademption occurred. *Id.* at 779, 119 N.W.2d at 238.

However, we specifically noted that our previous rulings holding that property was adeemed when competent testators sold or otherwise disposed of specific bequests were sound and would continue to control. *Id.*; *see also Anton*, 731 N.W.2d at 24. While we will not continue to apply the identity rule rigidly in all cases, the modified-intention approach applies to cases where specifically devised property is removed from a testator's estate through an act that was involuntary on the part of the testator. *Anton*, 731 N.W.2d at 24. Competency and voluntariness are key considerations in a modified-intention approach. However, there is no evidence that competency or voluntariness are in play here.

In *Anton*, we also discussed the difference between our ademption test and the tests contained in the UPC and the Restatement (Third) of Property. *Id.* at 25–26. We noted that the identity rule has been substantially altered in both the UPC and the Restatement (Third). *Id.* at 26; *see also* Unif. Probate Code § 2–606 (1997) (adopting the "intent

theory" of ademption); Restatement (Third) of Prop.: Wills & Other Donative Transfers § 5.2(c) (1999), at 348 (adopting the theory that a specific devise fails if property is no longer in the estate "unless failure of the devise would be inconsistent with the testator's intent"). However, we also noted that neither party in *Anton* asked us to abandon our identity approach or modified-intention approach to adopt the UPC or Restatement (Third) test. *Anton*, 731 N.W.2d at 26. We therefore applied our long-standing principles discussed above to the case. *Id.*

Under our prior caselaw, the Winnebago property is clearly adeemed. Neither party has alleged Clarine lacked capacity or voluntariness at the time the Winnebago property was sold and the Minnesota property purchased. The trust sold the Winnebago property in 2008, five years before Clarine's death and while Steven was a cotrustee. Clarine had five years between the sale of the Winnebago property and her death to amend the trust to bequeath the Minnesota property to Steven, but neither she nor Steven did this.

Further, Steven's argument that the Minnesota property was exchanged for the Winnebago property for purposes of a bequest has been rejected by this court in the past. The cases where we have found an exchange are cases where the property was missing from the estate due to either incompetence or involuntariness of the testator. In cases where the property was found to have adeemed, we have not upheld an exchange; rather, we only uphold exchanges where we have found that property was *not* adeemed. *See, e.g.*, *In re Estate of Wolfe*, 208 N.W.2d 923, 925–26 (Iowa 1973) (holding that, where an accident destroyed a specifically bequeathed automobile, the vehicle was not adeemed and an exchange could be made for the insurance proceeds); *see also Sprague*, 244 Iowa at 546, 57 N.W.2d at 216 (holding that a codicil adeemed

property held in trust and a contract to sell real estate could not be exchanged in its place); *Keeler*, 225 Iowa at 1354–55, 282 N.W. at 365 (finding that a specific bequest of a promissory note and mortgage was adeemed and could not be exchanged for later acquired real estate).

2. *Uniform Probate Code.* Steven additionally argues that we should adopt section 2–606(a)(5) of the UPC to address questions of ademption. He argues that our current approach is unduly harsh. In pertinent part, section 2–606(a)(5) of the UPC provides,

> (a) A specific devisee has a right to specifically devised property in the testator's estate at the testator's death and to:
>
> . . . .
>
> (5) any real property or tangible personal property owned by the testator at death which the testator acquired as a replacement for specifically devised real property or tangible personal property[.]

Unif. Probate Code § 2–606(a)(5) (amended 2010), 8(I) U.L.A. 262–63 (2013).

In *Anton*, we addressed the concern that our identity rule is unduly harsh. 731 N.W.2d at 23–24. We noted that the purpose of the modified-intention approach was to mitigate this perceived harshness. *Id.* Our modified-intention approach finds no ademption if the testator did not voluntarily sell or otherwise remove the property from the estate, or if the specific property was destroyed simultaneously with the testator's death. *Id.* We find that this approach is consistent with our rules of interpretation for trusts—the testator's intent is paramount. *Spencer Mem'l Fund*, 641 N.W.2d at 774–75. Our current approach analyzes the surrounding circumstances to determine if the property was adeemed through the voluntary acts of the testator.

Further, the Iowa legislature has selectively adopted provisions of the UPC, but notably has chosen not to adopt the provision regarding ademption. Iowa Code chapter 633D, which governs transfers on death security registration, contains similar provisions to Article VI, Part III of the Uniform Probate Code. *Compare* Iowa Code §§ 633D.1–.12, *with* Unif. Probate Code §§ 6–301 to 6–311 (amended 2010), 8(III) U.L.A. 382–91 (2013). The Iowa legislature has also adopted a provision from the UPC that allows a surviving spouse to take assets in a revocable trust as part of an elective share, in addition to a provision that allows wills to incorporate written lists of specific bequests of tangible personal property. *See Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 813 (Iowa 2011) (discussing similarities between the Iowa Probate Code and the UPC).

The legislature's decision to adopt some portions of a uniform act but not others is significant.

> We can determine legislative intent from selective enactment or divergence from uniform acts. We presume the Iowa legislature was aware of, but declined to follow, the [Uniform Probate Code]'s dower provision because it chose to shield the dower interest in all real estate from the estate's creditors.

*In re Marriage of Thatcher*, 864 N.W.2d 533, 541 (Iowa 2015) (quoting *Freedom Fin. Bank*, 805 N.W.2d at 814 (citations omitted)). We similarly conclude that the Iowa Legislature was aware of the UPC provision regarding ademption but decided not to adopt it as part of the Iowa Probate Code. We therefore decline to adopt the UPC section 2–606(a)(5) approach.

We agree with the decision of the district court and hold that the bequest of the Winnebago property was adeemed. The proper distribution of the Minnesota property is under Article 5, section C of the

trust.  The Minnesota property shall be divided equally between David and Steven.

**B. Iowa Property.**  The parties also disagree as to the interpretation of the provision regarding the Iowa property, specifically that "Steven C. Steinberg shall be given *the first right to purchase or rent David L. Steinberg's interest* in the NW1/4NW1/4 Sec. 16-99-26 for $1500.00 per acre and can exercise this right at any time."  (Emphasis added.)  David argues the Iowa property was gifted to him without limitation, and therefore, the subsequent provision giving Steven the option to purchase was void.  He asserts the $1500 price term applies only to Steven's option to rent the land while David owns it and not to Steven's right to purchase it.  Steven argues the trust gave him an express purchase option that was not ambiguous or repugnant to a prior bequest, and therefore it should not have been stricken.  In the alternative, he argues the provision is ambiguous.  David notes Steven did not argue below that the option was ambiguous.  However, the district court ruling on February 2 found the provision to be ambiguous, even while acknowledging "[t]he parties seem to agree that the provision . . . is *not* ambiguous."

As set forth earlier, we have a number of well-established rules that guide our resolution of disputes over the provisions in trusts. *Killian*, 459 N.W.2d at 499.  The overarching principle guiding our interpretation of the language used in trusts is the intent of the testator. *Spencer Mem'l Fund*, 641 N.W.2d at 774–75. We determine the testator's intent by examining the language of the instrument, the order of distribution, and the facts and circumstances surrounding the execution of the trust. *Killian*, 459 N.W.2d at 499.  The meaning of the language used is interpreted utilizing its usual and ordinary meaning. *Spencer*

*Mem'l Fund*, 641 N.W.2d at 775. When we determine the intent of the testator, "the question is not what the testator meant to say, but rather what is the meaning of what the testator did say." *Rogers*, 473 N.W.2d at 39.

When determining a testator's intent, we consider the document as a whole and give each part meaning and effect when possible. *Id.*; *In re Coleman's Estate*, 242 Iowa 1096, 1099, 49 N.W.2d 517, 519 (Iowa 1951).

> [T]he intention of the testator as expressed in the whole will is to be given effect, if possible, and . . . no part or provision of the will is to be rejected, unless so repugnant to a prior unequivocal devise or bequest as that they cannot both stand . . . .

*Iowa City State Bank v. Pritchard*, 199 Iowa 676, 678, 202 N.W. 512, 513 (1925). Although we continue to recognize the repugnancy rule, we "place increasing emphasis upon the consideration of the will as a whole and the reconciliation, if reasonably possible, of all its provisions." *Tague*, 248 Iowa at 1264, 85 N.W.2d at 26.

Our threshold question is whether the provision regarding the Iowa property is ambiguous. *Rogers*, 473 N.W.2d at 39. There are two types of ambiguity—patent ambiguity and latent ambiguity. *Id.* A term is patently ambiguous when the provision is uncertain, doubtful, or obscure on its face. *Id.* A term is latently ambiguous when the language is clear on its face, but something outside the trust renders the meaning uncertain, doubtful, or obscure. *Id.* at 39–40.

Of significance to this case, extrinsic evidence can be considered in resolving issues of ambiguity. *Id.* at 39. "Extrinsic evidence is not admissible to vary, contradict or add to terms of the will or to show an intention different from that disclosed by the language of the will." *Id.*

The district court found that the language of the trust as it relates to the Iowa property was ambiguous. We agree in part.

We think it is clear that the third sentence of Article 5, section B qualifies the first sentence. The first sentence leaves a specific gift to David—the Iowa property. The third sentence then assumes David will receive the property but gives Steven certain purchase and lease rights *in David's interest in that property*. Thus, the provisions are not repugnant and can be reconciled to give both effect.

However, the third sentence is ambiguous in the scope of the rights that it confers on Steven. It is unclear from the language if the parents intended the provision to be broken into two clauses, where Steven had the "first right to purchase" at market value *or* the right to rent the acres at $1500, to be exercised at any time or whether the parents intended for Steven to have the right to purchase *or* rent the property at the same price, at any time.

If the provision were interpreted to mean Steven could purchase the land gifted to David at the price of $1500, it would diminish the amount of his bequest from approximately $380,000 to approximately $60,000, while leaving the amount of land left to Steven undisturbed. Because the trust provision is not repugnant but is ambiguous, a genuine issue of material fact exists—specifically, the intent of the testators regarding Steven's rights with respect to the Iowa property. Summary judgment was therefore improper.

We remand the case for trial to allow the district court to hear and consider extrinsic evidence and determine the meaning of the disputed trust provision.

**IV. Conclusion.**

For the foregoing reasons, we affirm the decision of the district court to the extent it declared the Winnebago property that no longer existed in the trust adeemed. We likewise affirm the decision of the district court and find that the Minnesota property shall be split equally between David and Steven per Article 5, section C of the trust. We decline to adopt the UPC approach to analyzing questions of adeemed property. We find that the provision of the trust granting Steven the right to purchase or rent the Iowa property at the rate of $1500 per acre was ambiguous, and therefore summary judgment was improper. The case is remanded to the district court for a trial on the disputed trust provision and to enter further orders consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**