# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3949

_____

Charleen Corrado, Individually and as the Executrix of the Estate of John M
Corrado; Federal City Region, Inc.

*Plaintiffs - Appellants*

v.

Life Investors Insurance Company of America; Seth Miller; Patrick Melchert;
Kevin Crist; Frank Neeland, Jr.; Mark Thiel; Andrew Martin

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: October 18, 2017
Filed: January 2, 2018

_____

Before WOLLMAN, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In this most recent installment of the litigious history of the Life Investors
Owners Participation Trust, Charleen Corrado and Federal City Region, Inc. ("FCR")
brought suit against a number of defendants associated with the Trust, alleging

breaches of fiduciary duties and conversion. The district court[1] granted summary judgment to the defendants, and Corrado and FCR appeal. We affirm.

## I. Background

As recounted in our previous opinion, John Corrado and FCR[2] became associated with Life Investors Insurance Company of America ("Life Investors") in 1977.[3] Corrado sold Life Investors's insurance policies on a commission basis, and, as a result, Corrado and FCR were able to maintain accounts in a pension plan established by Life Investors—the Life Investors Owners Participation Trust (the "Trust").

In 2008, John Corrado[4] and FCR filed a lawsuit in the District of Maryland against Life Investors, the Life Investors Owners Participation Trust and Plan, and its trustees—John Cleavenger, Kevin Crist, Mike Kirby, Frank Kneeland, William Kuennen, R. Joe Smith, and Mark Thiel.[5] In that suit, Corrado and FCR alleged six counts: the first three alleged that the Trustees breached their fiduciary duties; Count IV alleged that Life Investors knowingly participated in the breaches alleged in

---

[1]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa, now deceased.

[2]FCR was created by John Corrado to market Life Investors's policies, and it is a participant beneficiary of the Trust.

[3]Their original association was actually with Bankers Union Life Assurance Company—Life Investors's predecessor—but we refer solely to Life Investors because that party was acting at all times relevant to this case.

[4]Shortly after he filed that lawsuit, John Corrado died. His widow, Charleen Corrado, was substituted as a party due to her role as personal representative for his estate.

[5]We refer to these individual defendants as the "Trustees."

Counts I through III; Count V alleged that the Trustees failed to provide appropriate documentation to participants; and Count VI alleged that the Trustees unjustifiably refused to allow Corrado to withdraw the money in his account. The Maryland court granted summary judgment to the defendants, and Corrado did not appeal that ruling. Life Investors advanced money to the Trustees to pay for the legal expenses related to the defense of this action.

During the pendency of the Maryland suit, Life Investors filed a lawsuit against Corrado and FCR in the District of Iowa, alleging that Corrado had breached a settlement agreement between the parties. After the district court granted summary judgment to Life Investors in that case, this court reversed and remanded based on the district court's misapplication of Iowa law. See Life Inv'rs Ins. Co. of Am. v. Fed. City Region, Inc., 687 F.3d 1117 (8th Cir. 2012). After remand, the district court again entered summary judgment in favor of Life Investors, and we affirmed. See Life Inv'rs Ins. Co. of Am. v. Corrado, 804 F.3d 908 (8th Cir. 2015). The final outcome of the Iowa litigation was a $1.3 million judgment in favor of Life Investors against both Corrado and FCR, which FCR satisfied by assigning sufficient funds from its Trust account to Life Investors.

Life Investors then sent an email to the Trustees informing them of its desire to be reimbursed for the costs advanced in defense of the Maryland lawsuit. This result, Life Investors explained, was authorized by Trust § 11.9, which states as follows:

> The Trustees shall have a lien upon the Trust Assets for any costs and attorneys' fees, in the event of any suit or proceeding regarding the Trust to which the Trustees, or any of them, may be parties or a party. If any Participant or beneficiary brings legal action against the Trustees, or any of them, the result of which shall be adverse to the party bringing the suit, or if any disputes arise with respect to the person or persons to whom delivery or payment of any property shall be made by the

-3-

Trustees, the cost to the Trustees of defending the suit shall be charged, to the extent possible, directly to the account of the Participant whose interest is in issue, and only the excess, if any, shall be included in the expenses of the Trust.

The Trustees unanimously voted to enforce § 11.9, and they deducted $431,925.49—the cost of the defense in the Maryland litigation—from the Trust accounts of Corrado and FCR. In turn, the Trustees paid this money to Life Investors as reimbursement of money advanced in defending the Trustees in the Maryland action.

In July of 2014, Corrado and FCR brought the instant lawsuit in the District of Iowa against the Trustees and Life Investors, alleging that the Trustees' actions in deducting the funds from Corrado's and FCR's Trust accounts constituted breaches of fiduciary duties and conversion. After discovery, both parties moved for summary judgment, and the district court granted summary judgment to the defendants. Corrado and FCR now appeal this ruling.

## II. Analysis

The appellants raise two primary issues. First, whether the district court correctly concluded that Trust § 11.9 authorized the Trustees to deduct funds from the appellants' Trust accounts to reimburse Life Investors for the money it advanced to pay for the defense in the Maryland litigation. And second, whether the district court erroneously concluded that the Trustees did not breach their fiduciary duties when they (1) transferred the appellants' funds to Life Investors, (2) allegedly deprived the appellants of a vested interest in Trust assets, or (3) failed to provide notice prior to transferring the funds. In addition, the appellants contend that the district court overlooked a dispute of material fact as to the reasonableness of the attorney's fees deducted from their Trust accounts, and they argue that Life Investors committed the tort of conversion. Exercising de novo review, see Gilkerson v. Neb. Colocation

-4-

<u>Ctrs., LLC</u>, 859 F.3d 1115, 1118 (8th Cir. 2017), we address each argument in turn and affirm the grant of summary judgment to the appellees.

A.

The appellants attack the applicability of Trust § 11.9 by arguing that the Maryland lawsuit was not a suit against the Trustees and that the Trustees were not charged for the defense in that case. The appellants further argue that a different section of the Trust precludes the use of Trust funds to pay for the defense because defense costs were advanced by Life Investors. We disagree.

"On acceptance of a trust, the trustee shall administer the trust according to the terms of the trust and according to this trust code, except to the extent the terms of the trust provide otherwise." Iowa Code § 633A.4201(1). Indeed, "[t]he terms of a trust shall always control and take precedence over any section of this trust code to the contrary." <u>Id.</u> § 633A.1105. In Iowa, "interpretation of a trust is guided by the intent of the testator." <u>In re Steinberg Family Living Tr.</u>, 894 N.W.2d 463, 468 (Iowa 2017). And Iowa courts "determine intent based on the language of the trust itself, utilizing the ordinary and usual meaning of the words included." <u>Id.</u>

The plain language of Trust § 11.9 describes two situations in which the Trust permits the Trustees to charge the account of a participant or beneficiary: (1) when "any Participant or beneficiary brings legal action against the Trustees, or any of them, the result of which shall be adverse to the party bringing the suit," and (2) "if any dispute shall arise with respect to the person or persons to whom delivery or payment of any property shall be made by the Trustees."

The Maryland suit triggered the first Trust provision, which permits the Trustees to charge the legal fees to the account of a participant. The appellants are participants who brought, and lost, a legal action against the Trustees. The

appellants' first contention—that the Maryland lawsuit was not against the Trustees—is belied by that case's operative complaint. In paragraphs 12 through 18 of that complaint—which identified who he was suing—John Corrado identified the individual Trustees of the Trust, and, in paragraph 19, he collectively defined all of those individual Trustees as the "Defendant Trustees." As stated above, Corrado pursued six theories of relief. Counts I through III alleged that the Defendant Trustees breached their fiduciary duties in different ways; Count IV alleged that Life Investors knowingly participated in and benefitted from those breaches; Count V alleged that the Defendant Trustees failed to provide documentation to participants in violation of ERISA; and Count VI alleged that the Defendant Trustees unjustifiably refused Corrado's withdrawal requests. Therefore, because five of the six counts were asserted directly against the Trustees and the action was decided in their favor, the express terms of Trust § 11.9 direct that "the cost to the Trustees of defending the suit shall be charged, to the extent possible, directly to the account[s] of" the appellants.

The appellants next assert that § 11.9 is inapplicable because, as a factual matter, there was no cost to the Trustees for defending the Maryland suit because Life Investors advanced the costs of the Trustees' defense. As evidentiary support, the appellants quote the appellees' statement of fact "that no Trust assets were used to pay attorney [sic] fees while [the Maryland Case] was ongoing," Appellants' Br. 28 (alteration in original) (internal quotation marks omitted), and the affidavit of Julie Willingham, in which she stated that "no distribution has been made or requested from Group Annuity Contract Y74552 to pay any costs or fees associated with this Maryland lawsuit," Appellants' App. 35-36.[6] These statements, while accurate, are irrelevant to the present case. Indeed, had the Trustees used Trust funds to pay for

_____

[6]Willingham's affadavit is dated June 24, 2010, and the Maryland litigation was not terminated until that court granted summary judgment to the defendants on March 11, 2011.

the defense during the pendency of the lawsuit, they arguably would have violated Trust § 11.9, which sets as a condition precedent to charging the participants' accounts that the ultimate outcome of the litigation is "adverse to the party bringing the suit." Therefore, the litigation must be at an end prior to the Trustees using Trust funds to pay the cost of their defense.

Further, we find that the Trustees did indeed incur "cost" in the form of attorney's fees in defending the Maryland action unsuccessfully brought by Corrado and FCR. That Life Investors advanced attorney's fees incurred by the Trustees is of no moment. The Trustees were entitled to a defense in the Maryland action, and regardless of whether those fees were advanced by Life Investors or another party or initially paid by the Trustees themselves, the Trustees may charge such sums to the appellants' accounts.

Relatedly, the appellants assert that Trust § 11.10 expressly precludes the Trustees from paying attorney's fees out of Trust assets when Life Investors initially pays them. Section 11.10 reads as follows:

> To the extent not paid by the Participating Companies, the Trustees shall have the power to pay from the Trust Assets all reasonable and necessary expenses, taxes and charges, and fees for counsel incurred in connection with the administration or operation of the Trust. The Trustees hereunder shall serve without compensation for their services.

The appellees counter by noting that the limitation in § 11.10—"[t]o the extent not paid by the Participating Companies"—is not found in § 11.9, and § 11.9 is the only section of the Trust that expressly concerns litigation against the Trustees. Under the plain language of the Trust, § 11.9 is both the only section concerning litigation against a trustee and the only section concerning litigation against a trustee instituted by a beneficiary or participant. Moreover, given that the expense of defending the Maryland suit arose because of the appellants' actions, it follows that the appellants

should bear that expense rather than the other beneficiaries.  See George Gleason Bogert, et al., The Law Of Trusts And Trustees § 802 ("If an act of one of the beneficiaries gave rise to the necessity for the expenditure, or he will obtain the sole or principal benefit from it, the trustee may reasonably place the burden of the expense upon him.").

Under Iowa law, the terms of the Trust are controlling.  Iowa Code Ann. § 633A.1105.  Here, "utilizing the ordinary and usual meaning of the words included" in the Trust, the current situation is expressly provided for.  See In re Steinberg Family Living Tr., 894 N.W.2d at 468.  As such, we are bound by the language of the Trust to conclude that the "Participant whose interest is in issue," Trust § 11.9, should bear the costs of the suit.  See Hanrahan v. Kruidenier, 473 N.W.2d 184, 189 (Iowa 1991) ("We agree with the trial court that in equity the [legal] expenses should be paid from the trust [because the] . . . payments were expressly authorized in the trust agreement."); Bogert, et al., supra, § 802 ("The settlor may make provisions as to the source or sources from which the trustee should pay expenses and these will be controlling.").

B.

The appellants next argue that the Trustees breached fiduciary duties when they (1) transferred the appellants' funds to Life Investors thereby giving Life Investors an interest in Trust assets, (2) deprived the appellants of a vested interest in Trust assets, and (3) failed to provide advance notice prior to transferring the funds.

The first two alleged breaches arise out of Trust § 14.3, which states:

Except as provided in Article VII, no provision of the Plan or Trust shall either directly or indirectly operate to give the Participating Companies any interest whatsoever in any funds or property held by the Trustees

-8-

under the terms of this Trust, or to deprive any Participant or beneficiary of his vested interest in the Trust as it is then constituted, nor shall any such provision cause any part of the income or corpus of the Trust to be used for, or diverted to, purposes other than for the exclusive benefit of the Participants or their beneficiaries.

The success of this argument therefore turns on whether application of § 11.9 in this case gives Life Investors an "interest" in Trust proceeds and whether the appellants' interests were "vested" at the time of the transfer.

Section 11.9 does not operate to give Life Investors any interest in Trust assets or proceeds. An "interest" is "[a] legal share in something; all or part of a legal or equitable claim to or right in property." Interest, Black's Law Dictionary (10th ed. 2014). Under the plain language of Trust § 11.9, the Trustees are given the ability to charge legal expenses directly to a party who brings an unsuccessful lawsuit against the Trustees. That the Trustees then take money recovered under § 11.9 and reimburse Life Investors does not change the result, and the appellants advance no precedent requiring a different outcome. Trust § 11.9 creates the "interest" in favor of the Trustees, and nothing in the Trust grants to Life Investors a legal right to, or interest in, Trust assets.

Next, the appellants were not deprived of their vested interests in Trust assets. The appellants assert that "when the value of the participant's accounts becomes 100% vested to him, the participant's interest in net Trust Assets becomes by law fixed, settled, and absolute and not subject to being defeated or changed." Appellants' Br. 38. In support of this claim, the appellants point to Trust § 4.2, which states that the value of a participant's contributions to the Trust is 100% vested to the participant. The appellees respond that the appellants' interests were only 100% vested with respect to net Trust assets—which are those assets remaining after accounting for any liabilities of the participants. Once the appellants lost the Maryland suit, a liability was created as § 11.9 operated to impose a lien on the

appellants' accounts in the amount of the attorney's fees incurred by the Trustees in defending the action.

The appellees' interpretation is more true to the plain language of the Trust because the appellants fail to appreciate the significance of the final clause of Trust § 4.2, which limits vesting "subject to the restrictions of Section 8.7." Section 8.7, in turn, provides that "no distribution shall be made to a Participant while there remains any indebtedness . . . of the Participant to a Participating Company." An interest is vested only where "the right to its enjoyment, either present or future, is not subject to the happening of a condition precedent." Vested Interest, Black's Law Dictionary (10th ed. 2014); see also Edworthy v. Iowa Sav. & Loan Ass'n, 86 N.W. 315, 316 (Iowa 1901) ("A vested right is an immediate fixed right of present or future enjoyment."). The appellants owed money to the Trustees. Under the plain language of the Trust, the § 8.7 limitation makes the vesting of the appellants' interests in their account funds contingent on satisfying that debt. Cf. In re Lunt, 16 N.W.2d 25, 32 (Iowa 1944) (holding that beneficiary's interest in trust assets was properly charged in the amount of a foreclosed debt where the loan was made at the request of that beneficiary).

Finally, the appellants argue that the Trustees breached a fiduciary duty by failing to provide notice to the appellants prior to deducting the funds from their accounts. As their sole Iowa authority for this assertion, the appellants claim that a "beneficiary is entitled to adequate information regarding the trust, *i.e.*, what the trust is and how the trustee has dealt with it." Schildberg v. Schildberg, 461 N.W.2d 186, 191 (Iowa 1990). But, as we read it, this case does not impose a duty on a trustee to inform a beneficiary of the enforcement of provisions found in the trust document itself. Cf. Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 986 (8th Cir. 1992) ("[T]his Court does not construe ERISA or the regulations under it to require that the appellee had a duty individually to warn, upon their sixty-fifth birthdays, each and all of the members of the plans which it insured that their benefits would be reduced

according to the plan's coordination of benefits provision unless they enrolled in Medicare."). Instead, Schildberg is concerned with whether a trustee should be removed for failing to provide a yearly accounting of the trust. 461 N.W.2d at 190-91. The appellants possessed a copy of the Trust document, and they instigated the Maryland lawsuit against the Trustees with knowledge that they would be responsible for the Trustees' legal fees if the matter was decided in favor of the Trustees. In the absence of Iowa authority imposing the additional duty the appellants demand, we believe the terms of the Trust itself provided sufficient notice.

C.

In their final arguments, the appellants contend that there is an issue of material fact as to the reasonableness of the attorney's fees and that Life Investors committed the tort of conversion.

There is no material dispute as to the reasonableness of the attorney's fees because the appellants failed to challenge the fees below. The appellants argue that they could not include this allegation in their complaint because they did not know the value of the legal services until January of 2016. But this argument is completely refuted by their amended complaint—filed on November 23, 2015—in which they repeatedly assert that the money taken out of their accounts was to reimburse Life Investors for the money it spent defending the Maryland lawsuit. Therefore, as a factual matter, the appellants knew that the fees were at least $431,919.00 because that is the amount that was charged to their accounts. The appellants—as the plaintiffs in this action—had the burden of challenging the fees if they wished to pursue that claim. See Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief."). While the appellants' complaint vehemently contests the means by which the Trustees acquired the money, nowhere do the appellants claim that the amount was unreasonable.

-11-

Finally, the appellants claim for conversion fails. "Conversion is the wrongful control or dominion over another's property contrary to that person's possessory right to the property." Blackford v. Prairie Meadows Racetrack & Casino, Inc., 778 N.W.2d 184, 188 (Iowa 2010) (internal quotation marks omitted). "The essential elements of conversion are: 1) ownership by the plaintiff or other possessory right in the plaintiff greater than that of the defendant; 2) exercise of dominion or control over chattels by defendant inconsistent with, and in derogation of, plaintiff's possessory rights thereto; and 3) damage to plaintiff." In re Estate of Bearbower, 426 N.W.2d 392, 394 n.1 (Iowa 1988). The appellants' argument on this point depends entirely on this court's finding that their interests were indefeasibly vested at the time the Trustees acquired the funds. As stated above, however, appellants' interests were subject to the terms of § 11.9, so they are unable to prove the first element of their conversion claim.

## III. Conclusion

For the reasons above, we affirm the district court.

_____