# IN THE COURT OF APPEALS OF IOWA

No. 23-0022
Filed February 7, 2024

**IN THE MATTER OF THE TRUST OF THE R.J. WENCK TRUST UNDER THE LAST WILL/TESTAMENT OF LANNY L. WENCK,**

**R.J. WENCK,**
        Appellant/Cross-Appellee,

**and**

**ANTHONY WENCK, BRENDA HOLT, and KRIS MCDONALD,**
        Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Madison County, Martha L. Mertz, Judge.

A lifetime beneficiary of a trust appeals the denial of his application for distribution. Trust remaindermen cross-appeal an order for the trust to pay a portion of the lifetime beneficiary's attorney fees. **AFFIRMED ON APPEAL; REVERSED ON CROSS-APPEAL.**

James R. Monroe of James R. Monroe Law Firm, Des Moines, for appellant/cross-appellee.

Billy J. Mallory and Trevor A. Jordison of Mallory Law, West Des Moines, for appellees/cross-appellants Anothony Wenk, Brenda Holt, and Kris McDonald.

Robert C. Gainer of Cutler Law Firm, P.C., West Des Moines, for appellee R.J. Wenck Trust.

Heard by Schumacher, P.J., and Ahlers and Langholz, JJ.

**AHLERS, Judge.**

This case presents two distinct issues—one presented on direct appeal and the other on cross-appeal. Both issues involve the R.J. Wenck Trust. As the relevant facts and circumstances relating to the two issues are distinct, we address each issue and the relevant facts separately.

**I.     Direct Appeal**

Lanny Wenck died in 2017. His last will and testament divided the residue of his estate equally between four children. While three of the children received their shares of the estate residue directly, the share left to the fourth child, R.J. Wenck, was to be held in trust for R.J.'s benefit during his lifetime. The remainder beneficiaries of the trust are the other three children.[1]

The terms of the trust require the trustee[2] to pay R.J. all net income of the trust annually. It also provides that the trustee,

> in their sole and absolute discretion, may pay to or apply for the benefit of R.J. . . . such portions of the principal of the trust as the trustee[] deem[s] advisable to provide for the education, health, support and maintenance of R.J. . . . after taking into account any other resources available to him for these purposes.

In an effort to protect the trust from creditors, the trust contains this spendthrift clause:

> No title in the Trust created in this instrument or in any property at any time becoming a part of this Trust, or in any income from this Trust, shall vest in any beneficiary, and neither the principal nor the income of such Trust shall be liable to be reached in any manner by the creditors of any beneficiary and no beneficiary shall have the power to sell, assign, transfer, encumber or in any other

---

[1] The remainder beneficiaries are Anthony Wenck, Brenda Holt, and Kris McDonald.

[2] The trust named Lanny's wife and Kendall Kerns as trustees. But Lanny's wife predeceased him, leaving Kerns to serve as the sole trustee.

manner to anticipate or dispose of his or her interest in such Trust, or the income produced thereby, prior to its actual distribution by the Trustees to the beneficiary.

In April 2019, R.J. filed an application for distribution of the 2018 net income and distribution of a portion of the principal. With respect to the principal, R.J. sought distribution to cover the costs of life insurance, health insurance, student loans, outstanding consumer and medical debt, and the purchase of a truck. He explained he needed "help . . . getting back on his feet" and had "suffered a back injury" that impacted his ability to work "higher paying auto-body technician positions." In total, R.J. sought payment of $79,740.72 from the trust.[3] The trustee initially objected to the application for distribution and sought more information from R.J. before deciding whether to invade the principal.

Having his distribution requests denied by the trustee, R.J. applied to the district court seeking an order directing the trustee to make the distribution. The district court held hearings on the application. At the hearings, R.J. reduced the amount of money he was requesting from the principal. He noted there was not actually $12,232.28 in net trust income from 2018 to distribute[4] and was instead seeking "about $4000" to cover medical and life insurance, "about $9500" to pay a Snap On tool account for R.J.'s work tools, "about $4500" for his student loans, "approximately $20,000" to purchase his friend's truck he had been borrowing, and $5000 for expenses.

---

[3] R.J. claimed he was entitled to $12,232.28 in 2018 net income and requested $43,141.87 to pay various debts, $4366.57 to pay for 2019 health and life insurance premiums, and $20,000 to purchase a truck from the trust principal.
[4] Counsel for R.J. instead explained, he was "asking if there was any net income, that it be distributed."

R.J. testified and explained why he believed he needed funds from the trust principal. He explained he lived with his girlfriend, Sarah, with whom he shared a child, and he also helped care for her three other children. R.J. explained that he and Sarah struggled with their finances and made modest incomes that could not support their family of six. R.J. went on to testify they have and require two vehicles, but one no longer works, so he borrowed a truck from a friend and promised to eventually buy the truck from the friend. R.J. testified he suffers from back problems, which impedes his ability to work and requires medical care, although he admitted he had worked full-time until a week prior to the first day of the hearing, when he decided to stop working.

The trustee also testified. The trustee explained that Lanny asked him to take care of the trust funds for R.J. and make "good financial decisions" to assist R.J. for his entire lifetime. He noted that the trust paid off the mortgage note on R.J. and Sarah's home and the bank assigned the promissory note and mortgage to the trust so that R.J. would have to make mortgage payments to the trust instead of the bank.[5] But R.J. stopped making mortgage payments to the trust in August of 2018.

The trustee also explained why he denied the April 2019 application for distribution. He stated the 2018 income distributions were made in the form of property tax payments and the trust's acquiescence following R.J. and Sarah's ongoing failure to make mortgage payments on their home loan, so there was no

---

[5] Lanny originally co-signed the mortgage note with R.J. and Sarah. The trust presumably took over the mortgage so that the bank would not initiate foreclosure proceedings in the event R.J. failed to make his mortgage payments.

net income to pay to R.J.  Then the trustee explained what factors he took into consideration when determining whether to invade the trust principal for the expenses for which R.J. sought payment or reimbursement.  With respect to the truck R.J. wanted to buy, the trustee explained the purchase of the pickup truck with 195,000 miles that would not hold all members of R.J.'s household and was not required by R.J.'s employer was not necessary.  He was concerned about using trust funds for a life insurance policy that would benefit Sarah, as the purpose of the trust was not to benefit her, and the trustee felt that life insurance should be budgeted for by R.J. as a part of the family's budget.  As to the medical insurance, the trustee considered that R.J.'s employer offered health insurance that he could have selected and that R.J. should have budgeted for it as a normal household expense.  The trustee also testified that he did not think the trust should cover the Snap On tools debt because the tools were nicer than R.J. could afford and tools of that quality and cost were not necessary.  As for R.J.'s student loan, the trustee considered that R.J.'s father was alive when R.J. took out the loan, so presumably if his father wanted to pay the loan, he would have done so when he was alive. The trustee also believed distribution of principal funds for outstanding debts would not be appropriate under the trust's spendthrift clause.

At the second day of the hearing, the trustee clarified that R.J. had not filed a new application for distribution since he stopped working.  And the trustee explained that, when he reviewed the April application, R.J. had been employed and "receiving a good income."  Likewise, the trustee did not have the medical records R.J. submitted to the court between the first and second days of the hearing when evaluating the April application.

The district court issued an order on the matter roughly a year later. The court determined that R.J. received the 2018 income from the trust and the trustee did not abuse his discretion when denying R.J.'s April application for distribution of trust principal. R.J. filed an Iowa Rule of Civil Procedure 1.904 motion to amend, enlarge, or modify the court's ruling, claiming he never received any 2018 income from the trust. The parties addressed the motion at another hearing. The court issued an order ruling on the motion but did not modify its original order in any manner. R.J. appeals.

### A. Standard of Review

Because trust proceedings are tried in equity, our review is de novo. *In re Steinberg Fam. Living Tr.*, 894 N.W.2d 463, 468 (Iowa 2017). However, to the extent we are required to review the district court's statutory interpretation, we review for legal error. *In re Est. of Melby*, 841 N.W.2d 867, 871 (Iowa 2014). "Our interpretation of a trust is guided by the intent of the testator." *Steinberg*, 894 N.W.2d at 468. "We determine intent based on the language of the trust itself, utilizing the ordinary and usual meaning of the words included." *Id.*

### B. Analysis

#### 1. 2018 net income

On appeal, all parties agree that the trust requires annual trust income to be distributed to R.J. But they disagree about whether there is outstanding 2018 income to pay R.J. R.J. points to a 2018 tax return showing that the trust made $5019 in income, so he reasons he is due those monies. But the remaindermen counter that R.J. was actually compensated by the trust's use of the 2018 income to pay the property tax and give credit to R.J. for missed payments on his home

mortgage. Dispositive of the issue is R.J.'s attorney's concession at the hearing on the motion. There, counsel stated: "We're asking if there was any net income, that it be distributed. *But I don't think there was any net income.*" (Emphasis added.) From this, we conclude there is no additional 2018 trust income payable to R.J. One way or another the trust used the 2018 income to benefit R.J., and there is no 2018 income left to pay. Moving forward this should not be an issue, as the trust, R.J., and Sarah modified the promissory note on their home loan to explicitly permit the trust to withhold any distributions and intervene to pay the property taxes should the taxes become delinquent.

### 2. Distribution of the principal

With respect to his application for distribution of the principal, R.J. first contends "payment of necessities or debts to finance necessities are not subject to the spendthrift provision of the trust under Iowa Code section 633A.2302(3) [(2019)]" and the district court erred by concluding otherwise. But the district court's order does not discuss the spendthrift provision beyond mentioning that the trust language contains a spendthrift provision in its recitation of facts. In short, its analysis did not hinge on application of the spendthrift provision.

We move on to R.J.'s second and primary contention, which is that he "has an enforceable right against the trustee [and] the trustee is required to distribute funds to R.J. for his support, health, and education[,] which are not subject to the trustee's discretion." What R.J. does not explain is *why* he believes distribution of principal funds is compulsory and not at the trustee's discretion.

We look to the language of the trust. With respect to distribution of the principal, the trust language at issue states:

the trustee[], in their sole and absolute discretion, may pay to or apply for the benefit of R.J. . . . such portions of the principal of the trust as the trustee[] deem[s] advisable to provide for the education, health, support and maintenance of R.J. . . . after taking into account any other resources available to him for these purposes.

This language limits for what purpose the trust principal can be distributed—limiting it to "education, health, support and maintenance of R.J." But that does not necessarily mean that the trustee is bound to make principal distributions whenever R.J. requests funds for one of these approved purposes. Instead, the trust gives the trustee "sole and absolute discretion" to decide whether to make a distribution after considering the "other resources available to [R.J.]" To conclude that R.J.'s request for distribution is not subject to the trustee's discretion would make this language superfluous. *See Steinberg*, 894 N.W.2d at 468 (noting that we consider the trust document as a whole and reconcile all provisions when reasonably possible); *see also U.S. Bank, N.A. v. Bittner*, 986 N.W.2d 840, 848 (Iowa 2023) (noting that courts assume no part of an agreement is superfluous). Instead, consistent with the express language of the trust, we agree with the district court that distribution of the principal is at the trustee's discretion.

Section 633A.4214(1) requires that a trustee "exercise a discretionary power within the bounds of reasonable judgment and in accordance with applicable fiduciary principles and the terms of the trust." Section 633A.4214(2) provides further guidance, explaining:

Notwithstanding the use of such terms as "absolute," "sole," or "uncontrolled" in the grant of discretion, a trustee shall act in accordance with fiduciary principles and shall not act in bad faith or in disregard of the purposes of the trust or the power. Absent an abuse of discretion, a trustee's exercise of discretion is not subject to control by a court.

So we review the trustee's refusal to distribute the principal for an abuse of discretion.

Upon our review of the record, we conclude the trustee did not abuse his discretion when denying the application for distribution. He provided justification, based on the information available to him at the time, as to why he did not approve the application with respect to each item for which R.J. sought distribution.[6] We conclude it was reasonable for the trustee to expect R.J. to budget for common household expenses like life insurance and health insurance rather than relying on the trust to fund those expenses so that the trust would not be depleted over time through various reoccurring household expenses.[7] And we take no issue with the trustee refusing to use trust funds to purchase R.J.'s desired truck based on the trustee's conclusion that it would not fit R.J.'s entire household and R.J.'s job did not require a heavy-duty truck. In other words, the trustee reasonably concluded the desired truck provided features R.J. did not need while not providing him with features he did need. As to R.J.'s student loan, we find no abuse of the trustee's discretion in concluding that because R.J. took the loan out when Lanny was alive,

---

[6] We note R.J. points to information and events that came to the trustee's attention after the trustee rejected his application for distribution. For example, he points to medical records from medical visits months after the trustee's rejection of his application and the fact that he stopped working about six months after the rejection. Because the trustee did not have that information available to him when reviewing the April 2019 application, we do not consider it when determining whether he abused his discretion.

[7] R.J. complained that his household was strapped for cash and simply did not have the means to budget for life insurance and health insurance premiums. But the remaindermen pointed out that R.J. appeared to spend his money freely—making near daily trips to convenience stores to purchase non-necessities such as snacks and tobacco or vaping products, while also regularly spending money at restaurants and bars and purchasing hundreds of dollars' worth of vitamins.

Lanny must have decided against paying the loan for him, so the principal should not be used to do what Lanny already decided not to do.

Finding no abuse of discretion in the trustee's decision to deny R.J.'s application for distribution of principal funds, we affirm the district court on the direct appeal.

## II.    Cross-Appeal

We turn to the cross-appeal.   The district court's ruling on R.J.'s 1.904 motion also addressed a few other, unrelated matters pending before the court.   One of those was an application made by R.J. for the trust to pay his attorney $58,981 in fees and $2408 in costs for the attorney's involvement in recovering missing assets from Lanny's estate.

Apparently, over $300,000 in cash was discovered in Lanny's safe following his death, and Lanny had made a $160,000 personal loan to one of his children and a $100,000 loan to another individual.  The cash was informally given to three beneficiaries of Lanny's estate; and the outstanding loans and cash were not originally inventoried as assets of the estate.  The annual trust report prepared in January 2019 showed a November 2018 deposit of $103,000 into the trust, which the parties agree was done to match the cash Lanny's other beneficiaries received from his safe.[8]  Special litigation counsel for the trust, retained in November 2019, also secured a settlement benefiting the trust.[9]  *See In re Tr. of R.J. Wenck*, No. 22-

---

[8] The appendix contains a ruling from the estate proceedings referencing this $103,000.  However, it is not a part of the record in this trust case.  As such, its inclusion in the appendix is improper, and we do not consider it.

[9] The global settlement agreement was referenced several times during the hearing on R.J.'s application for fees, but it does not appear in our record.  A May 4,

0478, 2023 WL 2671867, at *1 (Iowa Ct. App. Mar. 29, 2023). That special litigation counsel was paid by the trust on a contingency fee basis and ultimately received $55,216.44 in fees and costs. *Id.*

When ruling on R.J.'s application for fees, the district court reasoned Iowa Code section 633A.4507 permitted payment of some of R.J.'s attorney's fees because his efforts ultimately benefitted the trust by serving as a key catalyst to the trust receiving the $103,000. The court ordered the trust to pay $10,300 of the requested fees. The remaindermen cross-appeal that portion of the court's ruling.

## A.    Standard of Review

We review an award of attorney fees for an abuse of discretion. *In re Tr. No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013). "A court abuses its discretion when its ruling is based on grounds that are unreasonable or untenable." *Id.* "The grounds for a ruling are unreasonable or untenable when they are based on an erroneous application of the law." *Id.* (internal quotation marks and citation omitted).

## B.    Analysis

The remaindermen claim R.J.'s attorney cannot be reimbursed for his efforts because the trust was represented by special litigation counsel and "the trust ha[s] already compensated its attorney." While that is true, the trust received the $103,000 before it ever retained special counsel. So payment for special counsel's services was unrelated to the $103,000. Still the remaindermen balk at the contention that R.J. and his attorney's efforts actually uncovered the fact that

---

2021 order states that the global settlement was dictated into the record. Because no party ordered that transcript for our review, we do not have access to it.

cash was removed from the safe and improperly distributed to Lanny's other beneficiaries. They claim it was their attorney who made the discovery and reason that R.J.'s attorney should not get reimbursed for uncovering something he did not actually uncover. Emails between the attorneys show both were investigating what happened to the cash from the safe and the outstanding loans.[10] Regardless of who discovered that the cash in the safe had been improperly distributed and omitted from the estate's assets, it was R.J. and his attorney that picked up the thread and followed it, resulting in the trust receiving an additional $103,000.

However, the remaindermen have a final and persuasive argument that "[t]here was no judicial proceeding involving the administration of this trust which may give rise to R.J.'s request for the trust to pay his personal attorney fees." Section 633A.4507 permits recovery of attorney fees "[i]n a judicial proceeding involving the *administration of a trust*." (Emphasis added.) While R.J.'s attorney undertook efforts to discover what happened to the money from Lanny's safe and the trust ultimately benefitted by receiving an additional $103,000 from the estate, R.J.'s attorney's actions relate to administration of the estate rather than administration of the trust. Bolstering that conclusion is an exhibit provided by R.J. that shows his counsel filed a "petition for declaratory judgment determining ownership of assets and request for hearing" in the estate proceedings only. No similar filing was ever made in the trust proceedings. Moreover, aside from the parties' agreement that the $103,000 deposit into the trust was done to match the cash the other estate beneficiaries improperly received from Lanny's safe, the trust

---

[10] Some of this investigation related to matters ultimately resolved by special litigation counsel.

record contains no explanation of the source of the $103,000 deposit. That is because the matter was handled in the estate proceedings and not in the trust proceedings.

In short, R.J. and his attorney's actions did not relate to administration of the trust, so payment of related attorney fees cannot be authorized by section 633A.5407. We conclude the court erred in finding that section 633A.5407 authorized it to order payment of a portion of R.J.'s attorney fees from the trust. We reverse the district court's order for the trust to pay $10,300 toward R.J.'s attorney fees.

**AFFIRMED ON APPEAL; REVERSED ON CROSS-APPEAL.**